## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| George Kattula, Ashley Adams, John Alexander, Kenneth Axelsson, Tara Bennett, Al Bigonia, Joseph Blumetti, Darren Bradley, Dallas Bray, Franklin Calderón, Wayne Colt Carter, Allan Chiulli, Lolletta Cohen, Laleh Dallalnejad, Erick Eliezaire, Mark Gambell, Rodrigo Garcia, Mark Girshovich, Charles Glackin, Eldon Hastings, Roger Haston, Travis Houzenga, Dan Hyatt, Bobby Johnson, Jane Krieser, Eric Larson, Chris Longstreth, Ngoun Mang, Lisa Marcial, Bianca McWilliams, Victor Mechanic, Mihail Mihalitsas, Brady Lee Nessler, Frank Onimus, Vilasini Pillai, William Plyler, Edward Polhill, Steven Paperno, Luis Rodriguez, Earlando Samuel, Von Sims, Varun Singh, Larry Sowell, Vesselina Spassova, Richard Stefani, Christopher Suero, Natalie Tang, Daniel Tucker, Fatima Waheed, Eric White, Bob Whittington, and Karen Wright, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>Coinbase Global, Inc., and Coinbase Inc.,<br><br>          Defendants. | CIVIL FILE ACTION<br>NO.  1:22-cv-03250-TWT<br><br>**CLASS ACTION**<br><br><br>JURY TRIAL DEMANDED<br><br><br><br><br><br>**[PROPOSED]<br>ORDER FOR THE<br>APPOINTMENT OF A<br>RECEIVER** |

This matter has come before the Court upon Plaintiffs' Motion for the Appointment of a Receiver (the "Motion"). Plaintiffs' motion seeks the immediate appointment of a receiver for the limited purpose of allowing the receiver access to Defendants' books, records and other information to (1) audit the Plaintiffs' customer accounts, which are defined below; (2) determine if and how those accounts were compromised, (3) determine what asset were improperly transferred or frozen and what, if any, assets remain in the accounts, and (4) determine what fees, cryptocurrency or other assets of Plaintiffs, if any, Defendants have collected and kept for itself.

This narrowly-tailored relief, which only seeks to determine the current status quo of the Plaintiffs accounts, is an exercise that Defendants should have already done, but have not. For the reasons set forth below, the Court should grant Plaintiffs' Motion to Appoint a Receiver.

## *LEGAL STANDARD*

Pursuant to Rule 66 of the Federal Rules of Civil Procedure, the appointment of a receiver by a court is an appropriate remedial step when a plaintiff demonstrates an important right of interest in property that is threatened and in need of protection and the appointment is "auxiliary to some primary relief which is sought and which equity may appropriately grant." *Kelleam v. Maryland Cas. Co. of Baltimore, Md.*, 312 U.S. 377, 381, 61 S.Ct. 595, 85 L.Ed. 899 (1941). "[F]ederal law governs the

appointment of a receiver by a federal court exercising diversity jurisdiction." *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998).

It is well-established that "[t]he decision to appoint a receiver is an equitable one which rests 'in the sound discretion of the court.'" *U.S. Bank Nat'l Ass'n v. LG-328 Huntsville, AL, LLC*, No. 5:17-CV-01378-AKK, 2017 WL 5668392, at *1 (N.D. Ala. Nov. 27, 2017) (quotation omitted); *Gill v. Hartshorn*, No. 4:12-CV-77 (CDL), 2014 WL 12711871, at *1 (M.D. Ga. Jan. 9, 2014) ("The Court in its discretion may appoint a receiver in appropriate circumstances.") (citing *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998)).

The Eleventh Circuit recognizes that "[a] receiver is a neutral court officer appointed by the court, usually to 'take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of ... undertaking any [ ] appropriate action.'" *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998) (quotation omitted). While there is no precise formula for determining when a court should appoint a receiver, "several factors should be considered: (1) whether fraudulent activity has or will occur, (2) the validity of the claim, (3) the danger that property will be lost or diminished in value, (4) inadequacy of legal remedy, (5) availability of less severe equitable remedies, and (6) the probability that a receiver may do more harm than good.'" *Clough Mktg. Servs., Inc. v. Main Line Corp.*, No. 1:07-CV-0173R, 2007 WL 496739, at *2 (N.D. Ga. Feb.

13, 2007).  A court can, in its discretion, appoint a receiver for a limited purpose or scope of powers.  *See, e.g., Voyles v. Rice*, No. 1:12-CV-3146-SCJ, 2013 WL 12106335, at *6 (N.D. Ga. Sept. 6, 2013) (stating court's intention to appoint a receiver for limited purpose of representing interests of a corporate party); *United States v. Kight*, No. 1:16-CR-99-WSD, 2017 WL 4619024, at *5-6 (N.D. Ga. Oct. 16, 2017) (noting court in a related case appointed a receiver for limited purposes, including forensic auditing, and investigating and reporting on assets of trusts).

## *ANALYSIS*

There are myriad facts which demonstrate that Plaintiffs' accounts and assets are not securely maintained, Plaintiffs' assets continue to be at risk.  The record reflects that Defendants have a significant widespread problem with fraud, account mismanagement and inadequate customer service.  Moreover, these problems do not seem to be abating or even improving with time.  And, Coinbase has made it difficult, if not virtually impossible, for its account holders to get a sufficient response from Defendants to these problems.

### *Defendants Failed to Adequately Secure Customer Assets*

Coinbase Global, Inc. ("Coinbase") is an American publicly traded company that operates a cryptocurrency exchange platform.  It is the largest cryptocurrency exchange in the United States by trading volume, with trading volume in the hundreds of billions of transactions per quarter.  Coinbase Inc. provides the customer

service for Coinbase's cryptocurrency exchange platform and other Coinbase customer accounts, including the "Wallet" account customers (Coinbase Global, Inc. and Coinbase Inc. are referred to herein as "Coinbase" or "Defendants").

Coinbase assures customers of the safety of its platform, its purported cutting-edge cyber-security and its commitment to securely store the customers' assets, likening its internal systems to those of a banker or broker, assuring customers of the company's commitment to security store customer assets and providing other assurances of safeguards to the assets, accounts and transactions on the Coinbase platform.  In turn, customers have relied upon those assurances in choosing to open and maintain accounts with Coinbase.  Notwithstanding those assertions, Coinbase is unable to keep its customers' accounts and assets secure. Customer accounts are routinely hacked, breached, looted and emptied, often quickly wiping out what Coinbase customers have taken a lifetime to save. Through the Declarations filed in support of the Motion, Plaintiffs have identified numerous customers who have collectively lost millions of dollars' worth of assets due to account breeches.

### *Defendants Failed to Adequately Secure Customer Assets Even After Receiving Notification of Breaches of the Accounts*

Even after users report account breaches, Coinbase failed to protect those accounts from unauthorized withdrawals, and in some cases, prevented the actual

account holder from obtaining access to the account while allowing the fraudulent user to maintain access.  The evidence shows that multiple Plaintiffs notified Coinbase about issues with their account security, but Coinbase still allowed unauthorized withdrawals of funds *after* they notified Coinbase and after they were frozen out of their accounts.  These problems occur regularly.  In in mid-October Coinbase allowed the withdrawal of funds from a Plaintiff's user's account after he contacted Coinbase to secure his account and assets.  Rather than addressing this issue, Coinbase deleted the looted account and created a new one for the customer.

### *Defendants Lock Customers Out of their Accounts with No Warning or Explanation*

Coinbase also has demonstrated it cannot provide users reliable access to their own accounts.  Some Plaintiffs, who have thousands and even millions of frozen assets, have been locked out of their accounts for months and months at a time.  Those customers are deprived of the use of their assets and often given no explanation for being locked out of their accounts.

### *Defendants Cannot Adequately Identify Their Own Customers*

Despite having received: (1) the names of the representative Plaintiffs; (2) the state in which each resides as set forth in the Amended Complaint; and (3) hundreds of Coinbase claim numbers, informal complaints, and customer service communications from these Plaintiffs, Defendants contend they are unable to

identify the individuals.  Further, on numerous occasions, when customers contact Defendants regarding account breaches or thefts, they are sent communications with the wrong name and continue to be misidentified even after informing Defendants of their identity.

### *Defendants Open Accounts Without Their Customers' Knowledge or Consent*

According to Defendants' customer service, Coinbase creates "Coinbase Pro accounts," for users without their permission or knowledge.  As set forth in his Declaration, Plaintiff Larson never subscribed to or created a Coinbase Pro account. Nevertheless, after his regular Coinbase account was compromised, Coinbase informed him that all Coinbase users have a Coinbase Pro account and contended that his funds were transferred from his Coinbase account to the Coinbase Pro account he never knew he had and then liquidated from there.  These additional and unrequested accounts are providing a backdoor for third parties to steal from Coinbase users who do not know that the accounts even exist.

### *Defendants Failed to Maintain Accurate Account Records of Accounts that are Frozen, Hacked or Looted*

Coinbase cannot account for missing cryptocurrency and failed to provide users with complete information about what happened in their accounts, including what personal information may have been compromised, where their funds went,

and/or what profits Coinbase unjustly collected from any unauthorized transactions. For example, Coinbase closed Plaintiff Calderón's (authorized) Coinbase Pro account without explanation and Coinbase informed him his account holdings would be available for withdrawal from a (regular) Coinbase exchange account.  However, only a tiny percentage of his account holdings were transferred to the accessible account and Coinbase has failed to tell that Plaintiff what happened to his assets, despite Plaintiff Calderón's numerous attempts to get information, and even after making a "Formal Complaint" to Coinbase.  Other Plaintiffs have experienced similar problems and received little to no explanation or customer support, despite attempting to get information from Coinbase on what had occurred.

### *Defendants Deprive Users of Their Assets Unless They Agree to New User Agreements, Including Agreements that May Limit or Waive Their Rights*

Coinbase, Inc. has unilaterally amended its User Agreement at least thirty times over the past three years, including at least four times since this case was filed in August 2022.  Coinbase prevents account holders from accessing their funds, even to simply close their accounts, unless they agree to the latest User Agreement.  Thus, users are forced to choose between agreeing to terms which may limit or forfeiting their rights or accessing their assets and obtaining critical information regarding the status of the same.

***Defendants Have Failed to Adequately Address Customer Concerns When Issues Occur***

Further, as shown through many of Plaintiffs' Declarations in support of their Motion, when customers try to address these breaches through the customer support provided through Coinbase, Inc. given little to no redress.  Defendants have made seeking customer support unnecessarily difficult.  Customers often have to call and email numerous times, often over periods that can stretch into months and even years.  Customers are routinely told there is nothing that can be done, the loss is their own fault, and they are dissuaded from seeking redress.  Some customers have even been deliberately hung up on or have had their email communications returned as "undeliverable."

Coinbase outsources critical company operations, including customer service functions, and has failed to take responsibility for providing oversight to ensure those functions operate properly.  In a public filing, Coinbase Global, Inc. stated that it did not directly manage the operation of any of these third parties, including their data center facilities, and warned that such third parties could be subject to cybersecurity incidents, break-ins, computer viruses, privacy breaches, and other misconduct.  Thus, the very customer service Plaintiffs and other customers rely upon for assistance when they have breaches or other problems with their accounts may create additional insecurity and vulnerability for customers.

Based upon the evidence, the appointment of a receiver is appropriate. There is significant evidence that fraud has occurred and that it will continue to occur. Plaintiffs unquestionably are entitled to access to their accounts and information concerning their assets which they are not adequately receiving. Given the widespread account breeches, there is a continuing danger that, in the absence of determining why incidents continue to occur and what has occurred, property will be lost or diminished in value. As the market for cryptocurrency is volatile and uncertain, and blockchain cryptocurrency transactions may be difficult if not impossible legal remedies may be inadequate.

Given that the receiver will be charged with analysis and review and will not engage the takeover of any assets or operations, the appointment of a receiver in this instance is narrowly tailored. Further, given Defendants' inability to identify or service its customers, there is probability that a receiver may do more harm than good. Moreover, the receiver's charge, set forth below, is work that the Defendants should have been, but thus far, have failed to adequately do.

**WHEREAS,** Plaintiffs have made a sufficient and proper showing in support of the Motion and the appointment of a receiver; and IT IS THEREFORE ORDERED AND ADJUDGED as follows:

## <u>Appointment of Receiver</u>

1.      The appointment of a receiver for Defendants is appropriate.

2.      The Parties shall meet and confer to settle upon a recommendation to the
Court of a receiver.  If the Parties cannot come to an agreement within three
business days of this order of a proposed receiver, the parties may promptly
submit their respective recommendations and the Court will review and
decide whom to appoint.

## I.      Rights and Duties of the Receiver

The Receiver shall have the following general powers and duties:

A.      To identify any and all accounts Defendants opened or caused to be opened
in the names of Plaintiffs (the "Accounts") and whether and which of such
Accounts were created with or without Plaintiffs' authorization.

B.      To inspect all documents, including electronic documents, concerning the
Accounts, including, but not limited to, ledgers, account statements,
transaction records, contracts, account agreements, communications with
Plaintiffs or other persons and any other documents pertaining to the
Accounts.

C.      To prepare a full accounting of all debits, credits, transfers of assets, whether
cryptocurrency, NFTs, funds, or other assets (collectively, "Assets") to or
from the Accounts, including by name, and type of Asset, whether alleged to
be authorized or unauthorized by Plaintiffs, and use reasonable efforts to
identify which are alleged to be unauthorized.

D.  To determine what Assets currently are in the Accounts and provide an accounting of the same.

E.  To provide an accounting of any Assets deposited into the Accounts, by or as authorized by Plaintiffs are alleged to be transferred, stolen, converted or otherwise secreted from the Accounts (the "Stolen Assets").

F.  To use reasonable efforts to identify and investigate any transactions concerning the Accounts Plaintiffs allege were unauthorized, including, but not limited to, attempted or successful:  breaches or of the Accounts; transfer or conversion of Stolen Assets; changes of passwords, two factor authorization and other verification and security procedures; changes to other account information, including the user name, email, telephone number or other account identifying information (collectively, the "Unauthorized Transactions") and determine how and why such Unauthorized Transactions occurred, were attempted and/or were successful.

G.  To use reasonable efforts to identify where and how any of the Stolen Assets were transferred, whether they currently can be identified and if so, where they are located.

H.  To determine what measures Defendants have in place to ensure the security of the Accounts and Plaintiffs' Assets and how, why and to what extent the Unauthorized Transactions have occurred, notwithstanding such measures.

11

I.      To use reasonable efforts to determine why certain Plaintiffs cannot open or access to their Accounts (the "Locked Accounts") and what measures need to be taken in order to provide Plaintiffs with access to the Locked Accounts.

J.      To prepare a full accounting of all transaction costs, fees and other income Defendants have received or claim to be entitled to concerning the Accounts or assets deposited to or transferred therefrom, whether for Authorized Transactions, Unauthorized Transactions, chargebacks, offsets or other claims.

K.      To prepare a full accounting of all interest or other income Plaintiffs have received or should have received on their Assets.

L.      To inspect all documents and records pertaining to communications between Plaintiffs, Defendants and/or Defendants' agents regarding any Unauthorized Transactions.

M.      To review all documents concerning any inquiry or investigation pertaining to any Unauthorized Transaction, including regarding the disposition or outcome of such inquiry or investigation.

N.      To review all manuals, records and other documents concerning the processes and procedures regarding investigating transactions Defendants' customers allege are Unauthorized Transactions.

O.     To interview officers, directors, employees and agents, as well as those acting in their place employees and agents of Defendants concerning the matters set forth in A-N above.

## II.     Access to Information

A.     Defendants and their past and/or present officers, directors, employees and agents, as well as those acting in their place, are hereby ordered and directed to preserve and allow the Receiver to inspect books, records, documents, accounts, electronically stored information, other instruments and papers pertaining to the matters set forth in Part I above.

B.     Defendants' past and/or present officers, directors, employees and agents, and other appropriate persons or entities, shall answer under oath to the Receiver all questions which he may put to them and produce all documents as required by him regarding the Accounts and all matters set forth above or which will reasonably lead to information relevant to the matter set forth in Part I above.

C.     The Receiver is authorized to take immediate possession as is reasonably required to perform the Receiver's duties of any and all accounts, including financial accounts, books and records, electronically stored information, passcodes, and all other documents or instruments relating to the matters set forth in Part I above.

D.     Any persons receiving notice of this Order by personal service, electronic

mail, facsimile transmission, or otherwise, having possession of the

property, business, books, records, accounts, and electronically stored

information pertaining to the matters set forth in Part I above are hereby

directed to deliver the same to the Receiver, his agents, his attorneys and/or

his employees or allow him to inspect the same upon request.

### III.    Access to Property

The Receiver is authorized to inspect, or in his discretion take immediate possession

of all personal property wherever located pertaining to the matters set forth in Part I

above, including, but not limited to, electronically stored information, passcodes,

computers, laptops, hard drives, external storage drives, and any other such memory,

media or electronic storage devices, books, papers, data processing records,

cryptocurrency exchange records and accounts.

### IV.    Delivery and Access of Documents and Information

Immediately upon service of this Order upon them, Defendants and any other person

or entity served with a copy of this Order shall, immediately or within such time as

permitted by the Receiver in writing, provide access to, or, in the Receiver's

reasonable discretion, deliver over to the Receiver: all books and records of

accounts, all financial and accounting records, balance sheets, income statements,

account records, electronically stored information, and other papers; and documents

and information reasonably necessary to inspect, review and investigate the matters set forth in Part I above.

## V.    Cooperation with the Receiver

Defendants, their officers, directors, employees and agents, and all other persons or entities served with a copy of this Order, shall cooperate fully with and assist the Receiver in the performance of the Receiver's duties.   This cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order.

## VI.    Notice to Third Parties

The Receiver shall promptly give notice of his appointment as he deems necessary or advisable to effectuate the operation of his appointment.

## VII.   Prohibition Against Interference

A.      Defendants and all persons receiving notice of this Order by personal service, electronic mail, facsimile transmission or otherwise, are hereby barred from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would interfere with the Receiver reasonably carrying out his duties as set forth herein, including but not limited to:

a. Hindering, obstructing or otherwise interfering with the Receiver in the performance of his duties; such prohibited actions include, but are not limited to, concealing, destroying or altering records or information;

b. Destroying, concealing, altering or disposing of, in any manner, any of the books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations as such records pertain to the Accounts, the Unauthorized Transactions or any of the matters set forth in Part I above.

c. Interfere with or harass the Receiver, or interfere in any manner with the receivership.

d. Defendants, their officers, directors, employees and agents, and all other persons or entities served with a copy of this Order, shall cooperate with and assist the Receiver in the performance of his duties.

e. The Receiver shall promptly notify the Court of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

f.  This Part VII shall be binding on Defendants, upon any person insofar as he or she is acting in the capacity of officers, directors, employees or agents, and upon any person who receives actual notice of this Order by personal service, electronic mail, or any other commercial mail or electronic transmission.

## VIII.  Conflicts of Interest

The Receiver has a continuing duty to ensure that there are no conflicts of interest between himself and Defendants.

## IX.     Limitations on Liability of Receiver and His Agents

A.    Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

B.    The Receiver and all persons hired by Receiver are entitled to rely on all outstanding rules of law and Orders, and shall not be liable to anyone for their own good faith compliance with any Order, rule, law, judgment or decree. In no event shall the Receiver or a persons hired by Receiver be liable to anyone (1) with respect to the performance of their duties and responsibilities as Receiver or persons hired by Receiver, or (2) for any actions taken or omitted by them, except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross

negligence, or in reckless disregard of their duties.  Nothing in this provision is intended to provide a defense against liability for any actions taken by Defendants or their personnel prior to the appointment of the Receiver.

C.  This Court shall retain jurisdiction over any action filed against the Receiver or his agents based upon acts or omissions committed in their representative capacities.

D.  In the event the Receiver decides to resign, he shall first give written notice to Plaintiffs' counsel of record and this Court of his intention, and the resignation shall not be effective until this Court appoints a successor Receiver. The Receiver shall then follow such instructions as this Court may provide.

## X.    Fees, Expenses, and Accountings

A.  The Receiver is authorized to file motions to employ professionals, such as attorneys and/or accountants, whose rates will be disclosed in same.  The Receiver and his professionals, such as attorneys and/or accountants, shall file a periodic fee application for payment of reasonable fees and reimbursement of actual incurred costs.  The fee/cost applications shall be filed at a time that the Receiver deems appropriate in his discretion.  The Receiver and his professionals shall include in the fee/cost applications their statements for services for the relevant months of work and shall serve same

18

on counsel for parties in this action. Both the Receiver's and his

professionals' statements shall contain itemized time entries with the daily

hours spent on receivership matters.  The compensation of the Receiver and

his professionals shall be entitled to priority as administrative expenses.  The

Receiver shall not increase the hourly rates used as the bases for such fee

applications without prior approval of this Court.

B.   Defendants shall pay the Receiver's reasonable fees and expenses.

## XI.   Recommendations and Reports

A.   Within thirty (30) calendar days of his appointment, the Receiver shall file

with this Court and serve on the parties a report of his initial findings with

regard to the Accounts, Unauthorized Transactions and the matters set forth

in Part I.

B.   The Receiver shall maintain written accounts, itemizing receipts and

expenditures, describing all work done in connection with the receivership

as well as his findings and make such written accounts and findings

available to Plaintiffs and other Defendants for inspection within ninety (90)

calendar days of the entry date of this Order and thereafter file with this

Court and serve on the parties a report summarizing his efforts, investigation

and findings and performance of his duties as mandated by this Order.

## XII.   Service of This Order

Copies of this Order may be served by any means, including by way of personal service, commercial overnight service, electronic mail or facsimile transmission, upon any financial institution or any other entity or any other person that may have possession, custody, or control of any documents or assets of Defendants or that may be subject to any provision of this Order. The Receiver and his agents are hereby specially appointed to serve process, and/or effectuate service of process, including this Order and all other papers in this cause.

## XIII.  Preservation of Rights and Privileges

Nothing in this Order shall be construed to require that any Defendants abandon or waive any constitutional or legal privilege which they may have available to them.

## XIV.  No Bond

The Receiver is appointed without bond.

## XV.   Court Maintains Jurisdiction

This Order shall remain in full force and effect during the pendency of this case, or until further Order of this Court, upon application, notice and an opportunity to be heard, and that this Court retains jurisdiction of this matter for all purposes related to this action.

## XVI.  No Limitation on Plaintiffs' Use of Their Accounts

Nothing in this Order shall preclude Plaintiffs from using their Accounts, Defendants' cryptocurrency exchange or transferring their Assets to or from the Accounts.

So ORDERED this ___ day of _____, 2022.

_____
                                      United States District Judge

Submitted By:
  HERMAN JONES LLP

/s/ *John C. Herman*
_____

John C. Herman
  (Georgia Bar No. 348370)
Serina M. Vash (pro hac vice)
HERMAN JONES LLP
3424 Peachtree Road, N.E., Suite 1650
Atlanta, Georgia 30326
Telephone:  (404) 504-6500
Facsimile:  (404) 504-6501
jherman@hermanjones.com
svash@hermanjones.com