# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| George Kattula, Ashley Adams, John Alexander, Kenneth Axelsson, Tara Bennett, Al Bigonia, Joseph Blumetti, Darren Bradley, Dallas Bray, Franklin Calderón, Wayne Colt Carter, Allan Chiulli, Lolletta Cohen, Laleh Dallalnejad, Erick Eliezaire, Mark Gambell, Rodrigo Garcia, Mark Girshovich, Charles Glackin, Eldon Hastings, Roger Haston, Travis Houzenga, Dan Hyatt, Bobby Johnson, Jane Krieser, Eric Larson, Chris Longstreth, Ngoun Mang, Lisa Marcial, Bianca McWilliams, Victor Mechanic, Mihail Mihalitsas, Brady Lee Nessler, Frank Onimus, Vilasini Pillai, William Plyler, Edward Polhill, Steven Paperno, Luis Rodriguez, Earlando Samuel, Von Sims, Varun Singh, Larry Sowell, Vesselina Spassova, Richard Stefani, Christopher Suero, Natalie Tang, Daniel Tucker, Fatima Waheed, Eric White, Bob Whittington, and Karen Wright, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Coinbase Global, Inc., and Coinbase Inc.,<br><br>Defendants. | **Case No. 1:22-cv-03250-TWT** |

**COINBASE GLOBAL, INC. AND COINBASE, INC.'S
MEMORANDUM OF LAW OPPOSING PLAINTIFFS'
<u>MOTION TO APPOINT RECEIVER</u>**

Submitted By:

**HOLLAND & KNIGHT LLP**

Cynthia G. Burnside, Esq.
Georgia Bar No. 097107
Caroline J. Tanner, Esq.
Georgia Bar No. 392580
1180 Peachtree Street, N.W., Ste. 1800
Atlanta, GA 30309
(404) 817-8500
(404) 881-0470
cynthia.burnside@hklaw.com
caroline.tanner@hklaw.com

**DLA Piper LLP (US)**

Christopher G. Campbell, Esq.
Georgia Bar No. 789533
Emily B. Marshall, Esq.
Georgia Bar No. 131072
Sarah M. Carrier
Georgia Bar No. 377848
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 736-7800
(404) 682-7800 (facsimile)
Christopher.Campbell@dlapiper.com
Emily.Marshall@dlapiper.com
Sarah.Carrier@dlapiper.com

Matthew F. Miller, *Admitted Pro Hac Vice*
Isabelle Ord, *Admitted Pro Hac Vice*
Matthew.Miller@us.dlapiper.com
Isabelle.Ord@us.dlapiper.com

***Attorneys for Coinbase Global, Inc. and Coinbase, Inc.***

## I.    PRELIMINARY STATEMENT

In response to a baseless motion, in this set of 52 cases that should already be in arbitration, Coinbase requests the Court's assistance in putting this straightforward matter back on the usual track. Coinbase is committed to doing the same. Coinbase has filed, as best it can, the routine motion to compel that Plaintiffs' refusal to confirm their identities has delayed.

Plaintiffs' Motion to Appoint a Receiver ("Plaintiffs' Motion"), on the other hand, is far from routine. It has no basis in the law or facts, whatsoever, and was filed only to continue avoiding binding arbitration provisions. Plaintiffs' asserted need for a receivership is belied by their refusal to confirm who they are, which only requires the disclosure of the exact type of basic identity-confirming information that Plaintiffs would be required to provide to access their Coinbase accounts. Plaintiffs would have already provided this information to Coinbase if they were truly concerned about any potential wrongdoing. Instead, Coinbase was forced to seek emergency relief from this Court, compelling Plaintiffs to produce information confirming their identities.[1] In response, Plaintiffs represented to the Court that they would provide this identifying information and agreed that Coinbase's motion to

---

[1] By responding to this Motion, Coinbase expressly reserves and does not waive the right to compel arbitration of Plaintiffs claims.

1

compel arbitration would follow after Plaintiffs did so. Plaintiffs cannot use their decision to renege on their agreement to prevent Coinbase from enforcing its explicit right to arbitration.

If Plaintiffs' Motion is granted, it will get Plaintiffs no closer to resolving their claims, and it will turn the "extreme remedy" of receivership into routine motion practice in all types of consumer matters. Courts' limited resources should not be misused this way. The appointment of a receiver is appropriate "only when there is no remedy at law, or the remedy is inadequate." *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011). That is not the case here.

To get this case back on track, the Court should postpone resolving this Motion until its rules on Coinbase's Motion to Compel Arbitration, which now has been filed and which, if granted, will divest this Court of subject matter jurisdiction. Alternatively, if the Court rules on Plaintiffs' Motion, the Court should deny it for two reasons: first, there is no exigency justifying the "extreme remedy" of receivership; and second, none of the factors Courts consider when evaluating a motion to appoint a receiver justify appointing a receiver in this case.

## II.    STATEMENT OF FACTS

Coinbase "offers an online platform for purchasing, holding and transferring title to cryptocurrency." Am. Compl. ¶ 74. Plaintiffs have alleged that Coinbase, Inc.

had a net income of $3.6 billion in 2021 (Am. Compl., ¶75), that approximately 11.4 million users make at least one transaction on the Coinbase exchange each month, and that Coinbase generates revenues based on those transaction including "approximately $1.2 billion" in fees in the first quarter of 2022 alone. *Id.* at 83.

Before any Coinbase customer can open a Coinbase account or use Coinbase Wallet, they are required to agree to the Coinbase User Agreement ("UA") or Coinbase Wallet Terms of Service ("TOS"). Coinbase Wallet is a separate product that allows users to self-custody their cryptocurrency. Both the Coinbase UA and Coinbase Wallet TOS contain an arbitration agreement that requires binding individual arbitration before a single arbitrator pursuant to the American Arbitration Association's Consumer Rules.[2] The UA and TOS's arbitration agreements are valid, binding, and have been enforced by numerous state and federal courts throughout the country.

Plaintiffs filed an Amended Complaint on October 21, 2022, adding 51 new named Plaintiffs, and additional claims. *See* Pls' Am. Compl., ECF No. 16. Upon service of the Amended Complaint, Coinbase Counsel contacted Plaintiffs' Counsel to obtain basic information that would allow Coinbase to verify the Plaintiffs'

---

[2] *See* Decl. of Suellen Black ¶¶ 13, 20, filed simultaneously but separately herewith, ECF No. 62-1.

identities so that it could confirm, with certainty, Plaintiffs' accounts and the applicable User Agreements that they accepted.[3] In so doing, Coinbase Counsel notified Plaintiffs' Counsel that the Plaintiffs were subject to arbitration provisions accepted upon opening their Coinbase or Coinbase Wallet accounts. Plaintiffs refused to provide the identity confirming information and, instead, filed their Motion to Appoint a Receiver ("Plaintiffs' Motion").

## III.   ARGUMENT

### A.   This Court Should Decide the Motion to Compel Arbitration First.

Arbitrability "involve[s] the threshold issue of the authority of the district court to entertain the litigation." *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252–53 (11th Cir. 2004). Thus, Plaintiffs' Motion is not ripe "until the threshold arbitrability issue is resolved and this Court determines that jurisdiction lies properly with this Court." *Chamlee v. Jonesboro Nursing & Rehab. Ctr., LLC*, 2019 WL 6042273, *5 (N.D. Ga. Aug. 14, 2019). "[If] a valid arbitration clause exists between the parties … this Court must dismiss the case under Fed. R. Civ. P. 12(b)(1) because it lacks subject matter jurisdiction." *Thomas v. Sherwin P. Robin*

---

[3] Decl. of M. Miller in Supp. of Mot. to Require Limited Disclosures from Pls. for Purposes of a Mot. to Compel Arbitration, Ex. A, ECF No. 47-3.

& *Assocs., P.C.*, No. 1:16-CV-2529-AT-AJB, 2017 WL 8186864, at *2 (N.D. Ga. Sept. 7, 2017), *report and recommendation adopted*, No. 1:16-CV-2529-AT, 2017 WL 8186865 (N.D. Ga. Oct. 20, 2017). Thus, granting the extraordinary relief of a receiver, in the face of a pending motion to compel, would be illogical and incongruous. This is particularly true in this case where plaintiffs have withheld identity-confirming information and prevented Coinbase from fully briefing its motion to compel. This gamesmanship should not be rewarded.

### B.    Even if This Motion Were Procedurally Proper, Plaintiffs Have not Demonstrated the Imminent Threat Required to Justify a Receiver.

Because the Court should first decide and grant the motion to compel arbitration, it does not need to reach the merits of Plaintiffs' Motion. Regardless, there is no basis in law or fact for the "extreme remedy" of a receiver here. Plaintiffs have made no credible claim of an immediate threat to their accounts – they have allegedly already incurred the alleged losses. *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011); *U.S. Bank Nat'l Ass'n v. LG-328 Huntsville, AL, LLC*, No. 5:17-CV-01378-AKK, 2017 WL 5668392, at *5 (N.D. Ala. Nov. 27, 2017) (declining to appoint a receiver where plaintiff had "no credible contention supporting the existence of an immediate threat" to the property at issue in the litigation); *also PNC Bank NA v. Presbyterian Retirement Corp. Inc.*, 2014 WL

6065778, at *8-9 (S.D. Ala. Nov. 13, 2014)(declining to appoint a receiver where plaintiff's hypothetical catastrophic allegations and "alarmist rhetoric" were insufficient to establish there was imminent danger to the plaintiff's property at issue in the litigation.)   In the Eleventh Circuit, appointment of a receiver is such an "extreme remedy" that it is appropriate "only when there is no remedy at law, or the remedy is inadequate." *PNC Bank, N.A.*, *3; *Clough Mktg. Servs., Inc.*, 2007 WL 496739, at *2; *IP Co., LLC v. Cellnet Tech., Inc.*, 2008 WL 11337779, at *1 (N.D. Ga. Dec. 18, 2008).

Moreover, Plaintiffs do not need a receiver to do any of the things Plaintiffs request. Coinbase customers can check their account balances and fees, withdraw funds, or even close their accounts at any time. Any customer concerned that their accounts are somehow compromised can freeze their accounts, preserving the status quo themselves.[4] And for any Plaintiffs allegedly unable to access their accounts, Coinbase can assist as soon as Plaintiffs confirm their identities. None of these steps require a receiver. Plaintiffs' Motion should be denied or at least stayed on this basis

---

[4] *See My Account Was Compromised*, Coinbase, https://help.coinbase.com/en/coinbase/privacy-and-security/account-compromised/my-account-was-compromised (last visited Jan. 17, 2023); *see also Accessing My Account*, Coinbase, https://help.coinbase.com/en/coinbase/managing-my-account/get-back-into-my-account/account-access (last visited Jan. 17, 2023).

alone.

Plaintiffs cite no legal authority supporting the extreme relief requested here. Indeed, many of Plaintiffs' cases have nothing to do with receivers at all.[5]  Others merely reference the existence of receivers without discussion.[6]  Of the handful of cases Plaintiffs cite that actually address receivership, half deny appointment.  Not a single case Plaintiffs cite involves or supports appointment of a receiver at the pre-

---

[5] Four of Plaintiffs' cases are about preliminary injunctions, not appointment of a receiver. *See BDI Cap., LLC v. Bulbul Invs. LLC*, 446 F. Supp. 3d 1127, 1137 (N.D. Ga. 2020) (merely holding that Bitcoin is "specific intangible property" for purposes of a state law conversion claim); *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805345 (S.D. Fla. June 17, 2022)(granting a preliminary injunction to freeze the crypto currency of an anonymous defendant with no other known assets); *Leidel v. Project Invs., Inc.*, No. 9:16-CV-80060, 2021 WL 4991325 (S.D. Fla. May 28, 2021) (granting a preliminary injunction to freeze nearly 12,000 Bitcoin that defendant, who could not be located, was actively dissipating); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) (discussing procedural differences between appeals of preliminary and permanent injunctions, and in no way implicating receivership).

[6] *See United States v. Kight*, No. 1:16-CR-99-WSD, 2017 WL 4619024 (N.D. Ga. Oct. 16, 2017) (criminal case briefly mentioning a separate state court decision to appoint a receiver in a prior case in which one party was alleged to "have stolen or wrongfully depleted assets" at issue in the litigation); *S.E.C. v. Wencke*, 783 F.2d 829 (9th Cir. 1986) (challenging a post-judgment disgorgement order without any discussion about the propriety of an existing receiver); *Sec. & Exch. Comm'n v. Wells Fargo Bank, N.A.*, 848 F.3d 1339 (11th Cir. 2017) (dealing with the rights of non-parties who claim property under the control of an already established receiver).

answer stage or under facts analogous to those here.[7]  Thus, Plaintiffs fail to establish that the law requires, or even permits, appointment of a receiver here.

### C.    All of the relevant factors weigh against appointing a receiver.

As Plaintiffs' case law states, appointing a receiver "is an extraordinary remedy" and "no precise formula exists for determining when a court should resort to appoint a receiver." *Clough Mktg. Servs., Inc. v. Main Line Corp.*, No. CIV.A. 1:07-CV-0173R, 2007 WL 496739 (N.D. Ga. Feb. 13, 2007), citing *Bookout v. Atlas Fin. Corp.*,395 F. Supp. 1338, 1341 (N.D. Ga. 1974), *aff'd sub nom. Bookout v. First Nat. Mortg. & Disc. Co.*, 514 F.2d 757 (5th Cir. 1975).  However, courts generally consider several factors in deciding whether to appoint a receiver: (1) whether fraudulent activity has or will occur, (2) the validity of the claim, (3) the danger that property will be lost or diminished in value, (4) inadequacy of legal remedies, (5)

---

[7] *See Kelleam v. Maryland Cas. Co. of Baltimore, Md*., 312 U.S. 377, 381 (1941) (reversing appointment of receiver where district court had no jurisdiction to decide the underlying matter); *U.S. Bank Nat'l Ass'n v. LG-328 Huntsville, AL, LLC*, No. 5:17-CV-01378-AKK, 2017 WL 5668392, at *1 (N.D. Ala. Nov. 27, 2017) (denying appointment where plaintiff failed to show "imminent danger of diminution in value" of subject property); *Gill v. Hartshorn*, No. 4:1 2-CV-77 (CDL), 2014 WL 12711871, at *1 (M.D. Ga. Jan. 9, 2014) (denying motion for receiver where it required the court to decide unsettled factual questions without a factual record); Clough *Mktg. Servs., Inc. v. Main Line Corp.*, No. CIV.A. 1:07-CV-0173R, 2007 WL 496739 (N.D. Ga. Feb. 13, 2007) (denying appointment where plaintiffs failed to show the subject property was "the only asset available to the defendants" and there were other ways to preserve it).

availability of less severe equitable remedy, and (6) the probability that a receiver may do more harm than good." *Id.* However, a party's speculation that appointing a receiver is the best way to prevent fraudulent activity is insufficient to justify the extreme remedy of receivership. *See id.* (denying motion to appoint a receiver based on "at best speculative" arguments). As this Court has held, "receivers should only be appointed in *exceptional circumstances*." *Bookout*, 395 F. Supp. at 1341 (emphasis added) (citing *Kelleam v. Maryland Casualty Co.*, 312 U.S. 377, 381 (1941)). Where there are "more efficient" means of preserving property, and "ample means of obtaining satisfaction of the judgments at hand," a district court abuses its discretion by appointing a receiver. *United States v. Bradley*, 644 F.3d 1213, 1311 (11th Cir. 2011). Because none of these factors exist here, Plaintiffs' Motion should be denied.

### 1.   *Whether fraudulent activity has or will occur.*

Failing to allege credible facts demonstrating fraud by Coinbase requires denial of Plaintiffs' Motion. *See M.L. Aslan, LLC v. Stadco, Inc.*, 2013 WL 12070097, at *1 (N.D. Ga. Oct. 15, 2013) (denying receiver where plaintiff had no "viable fraud claim against Defendants"); *E. Ansley Builders, LLC v. Fed. Deposit Ins. Corp.*, 2009 WL 10670646, at *2 (N.D. Ga. Dec. 2, 2009); *IP Co., LLC v. Cellnet Tech., Inc.*, 2008 WL 11337779, at *2 (N.D. Ga. Dec. 18, 2008). Here,

Plaintiffs' fraud allegations focus entirely on the misconduct of *third-party* scammers, *not Coinbase*.  For example, Mr. Lee's declaration relies on an email from a third-party (support@eu-coinbase.com) unaffiliated with Coinbase and from an inactive domain.  Plaintiffs' Motion, at 3 (citing Lee Decl. and attaching Ex. A.).

Even where Plaintiffs refer to Coinbase, they do not establish fraud, nor could they under the circumstances alleged. For example, Plaintiffs argue that Coinbase allegedly "fail[ed] to tell Plaintiffs that Coinbase makes money on every transaction," but the User Agreement does just that: "Coinbase makes money when you purchase or sell Digital Assets on the Coinbase Site."[8] *See Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315 (N.D. Ga. 1998) (Thrash, J.) (dismissing fraud claim where fees disclosed in the parties' agreement).

Plaintiffs' other purported assertions of "fraud" are nonsensical. For example, Plaintiffs claim fees fully disclosed in Coinbase's User Agreement constitute "illegal" seizures.[9] Am. Compl, ¶ 100. Just the same, Plaintiffs speculate, with no admissible evidence, that *Coinbase* "open[ed] unauthorized accounts" for any plaintiff. None of this speculation rises satisfies this factor.

---

[8] Black Decl., Ex. 1, Coinbase User Agreement, ECF No. 62-1, Ex. 1.

[9] *Coinbase User Agreement, supra* at § 4.6.

### 2. *Validity of the claim.*

Citing no legal authority, Plaintiffs assert that this factor weighs in their favor because they have a "right to the property in question." That is not what this factor is about. This factor turns on the validity of the causes of action alleged in their complaint.  Plaintiffs omit any arguments or admissible evidence directed to even a single cause of action—the motion should fail without more.  In *Gill v. Hartshorn*, 2014 WL 12711871, *1 (M.D. Ga. Jan. 9, 2014), the court denied appointment of a receiver, in part, because "it is not clear from the present record that [plaintiffs] have valid claims against [defendants], … and the Court declines to grant what amounts to an out-of-time summary judgment motion." *Id.* Plaintiffs' lack of argument here means this Court should do the same. In any event, this factor favors Coinbase because Plaintiffs' claims are substantively meritless because they seek to hold Coinbase liable for the conduct of third parties.

### 3. *Risk that property will be lost or diminished.*

This factor also weighs against appointment of a receiver. Based on Plaintiffs' allegations alone, there is no risk that any judgment would go unsatisfied. Plaintiffs have alleged that Coinbase, Inc. had a net income of \$3.6 billion in 2021, and that Coinbase generates revenues based on those transaction including "approximately \$1.2 billion" in fees in the first quarter of 2022 alone.  Am. Compl., ¶¶ 75, 83.

Plaintiffs cannot justify their extraordinary request with a hypothetical and baseless risk of property loss. *See Clough Mktg. Servs., Inc. v. Main Line Corp.*, 2007 WL 496739, at *1 (N.D. Ga. Feb. 13, 2007) (denying receiver because "it is at best speculative as to whether appointing a receiver over the defendants' Georgia assets is the only way to prevent fraudulent activity or preserve the defendants' assets"); *U.S. Bank Nat'l Ass'n v. LG-328 Huntsville, AL, LLC*, No. 5:17-CV-01378-AKK, 2017 WL 5668392, at *4 (N.D. Ala. Nov. 27, 2017) (risk of property loss factor is not met where moving party provide "no credible contention supporting the existence of an immediate threat" to the property at issue). Further, even if Plaintiffs established a risk of property loss, as set out below, such loss is fully addressed by monetary damages.

### 4. *Inadequacy of legal remedy.*

Plaintiffs have no credible argument that their legal remedies are inadequate. Any alleged loss of cryptocurrency, whether missing or devalued can be rectified, if necessary, by compensating Plaintiffs with money damages, a quintessentially *legal* remedy.  Plaintiffs' argument to the contrary is flatly contradicted by their request for monetary damages in the Amended Complaint. *See* Am. Compl. ¶¶ 10, 615, 625, 649, 653, 718, 731, Prayer for Relief. As such, this factor also weighs against

appointment of a receiver. *See Bradley*, 644 F.3d at 1310.[10]

### 5.   *Availability of less severe equitable remedy.*

Plaintiffs not only have less severe available remedies, but have affirmatively rejected them. For the relief actually sought by the Receiver Motion—access to information about Plaintiffs' accounts and Coinbase operations—Plaintiffs will have ample opportunity to obtain that information in discovery at the appropriate time.[11] In fact, Plaintiffs would likely already have the information they seek had they abided by their contractual obligations and filed arbitrations rather than the complaint in this case. As a result, this factor also weighs in favor of denying Plaintiffs' Motion.

### 6.   *Probability that a receiver may do more harm than good.*

Appointment of a receiver in this case, for a handful of individuals dissatisfied with Coinbase's customer service, will do far more harm than good. The

---

[10] Plaintiffs' case law on this factor does not support their Motion as it involves preliminary injunctions, not receivers. *See Astrove v. Doe*, 2022 WL 2805345, *1 (S.D. Fla. June 17, 2022); *Leidel v. Project Investors*, Inc., 2021 WL 4991325, *1 (S.D. Fla. May 28, 2021). Plaintiffs have neither sought a preliminary injunction nor met the legal standard for one.

[11] Plaintiffs' reliance on *Securities & Exchange Commission v. Wells Fargo Bank, N.A.*, 848 F.3d 1339 (11th Cir. 2017), is misplaced because the case involved a district court's authority to fashion relief *within* an existing equity receivership. Id. at 1343-44. Creation of the receivership was not challenged, and was not reviewed by the Eleventh Circuit.

appointment of the receiver carries substantial burden, harm, and inefficiency for Coinbase.  The lengthy list of "Rights and Duties" Plaintiffs seek to bestow upon a receiver in their proposed order, (ECF. No. 23-2, at 11-14), goes far beyond the scope of information needed to resolve Plaintiffs' individual claims, is vague about who "Plaintiffs" are and exceeds the scope of discovery likely permitted in arbitration.[12]  Plaintiffs' proposed receiver will be extraordinarily intrusive and expensive to Coinbase.  As another Court in this district has recognized, "[t]he cost of appointing a receiver, including the receiver's hourly rate and the time and expense involved in assembling records for the receiver's review, will likely be significant." *IP Co., LLC v. Cellnet Tech., Inc.*, *No.* 1:06-CV-3048-JEC, 2008 WL 11337779, *2 (N.D. Ga. Dec. 18, 2008) (denying motion because the "appointment of a receiver would necessarily complicate the litigation" without any identifiable benefit).  The cost and attendant risk are even more significant here because they would mandate access to Coinbase's proprietary security systems.

Plaintiff's proposed order would give the receiver the sweeping power to

---

[12] Among other things, Plaintiffs' proposed order bestows on the receiver power to investigate the alleged "Unauthorized Transactions" including those attempted but unsuccessful, identifying how and why they occurred, any changes in account information such as usernames, passwords, emails and phone numbers, and further grants the power to conduct "interview[s] of officers, directors, employees and agents" of Coinbase. Proposed Order, Dock. No. 23-2, pp. 11-16.

14

"inspect, or in his discretion take immediate possession of all personal property wherever located pertaining to the matters set forth in Part I above, including but not limited to, electronically stored information, passcodes, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books papers, data processing records, cryptocurrency exchange records and accounts."  (ECF No. 23-2, p. 15).  Nor could the access of a receiver be easily limited to just Plaintiffs' accounts.

Plaintiffs fail to identify a tangible benefit for the extraordinary relief they seek and make no effort to balance any purported good against the harm caused by appointing a receiver. S*ee Petitpren v. Taylor Sch. Dist.*, 104 Mich. App. 283, 292 (1981) (finding a receiver appropriate only when "other approaches have failed"). The refusal of Plaintiffs' Counsel to provide identity-verifying information, and demands that customer service representatives refuse to assist Plaintiffs, are irrational, counterproductive, and withhold information they will have to provide in any forum during discovery.  Such tactics reveal the depths to which Plaintiffs' Counsel is willing to dive to disrupt the Court's usual procedure for assessing arbitrability of Plaintiffs' claims.  And in so doing, Plaintiffs acknowledge that their individual claims should be decided by arbitration.

15

**D.     Early Discovery is not an Appropriate Justification for Receivership.**

Plaintiffs here are seeking a receivership for a very unexceptional, meritless purpose: early discovery.  In fact, Plaintiffs stated purpose for appointing a receiver to "(1) audit the plaintiffs' customer accounts; (2) determine if and how those accounts were compromised; (3) determine what assets, if any, remain in the accounts, and (4) determine what fees or crypto, if any, Coinbase collected and kept" are all appropriately determined by discovery in arbitration.  Plaintiffs' Motion, 4-5.  Coinbase is aware of no case where a Court has appointed a receiver as a vehicle for early discovery. Rather, Courts *stay* discovery pending determination of a motion to compel arbitration.  *See Chamlee*, 2019 WL 6042273, *5  (staying discovery pending decision on motion to compel arbitration ); *see also Blinco*, 366 F.3d at 1252–53 ("The arbitrability of a dispute similarly gives the party moving to enforce an arbitration provision a right not to litigate the dispute in a court and bear the associated burdens."); *Ebix, Inc. v. DCM Grp., Inc.*, No. 1:17-CV-03653-ELR, 2019 WL 13209665, at *1 (N.D. Ga. May 31, 2019) (staying discovery pending decision on motion to compel arbitration); *Corcoran v. Shearson/Am. Exp. Inc.*, 596 F. Supp. 1113, 1118 (N.D. Ga. 1984) (same); *Workman v. Hire Techs., Inc.*, No. CV 120-070, 2020 WL 5637083, at *1 (S.D. Ga. Sept. 21, 2020) (same).

Plaintiffs should not be permitted to thwart the binding arbitration provisions

16

to which they agreed, by using a receiver to conduct onerous and costly discovery.

## IV.    CONCLUSION

The appointment of a receiver, particularly at this juncture of the litigation, is not only unwarranted and unjustified, it would potentially result in enormous harm with no measurable benefit to the Plaintiffs. There is no imminent threat justifying this extreme remedy and, for the reasons stated herein, and in Defendants Motion to Compel Arbitration, Coinbase Global, Inc. and Coinbase, Inc. respectfully request that this Court enter an order staying, or alternatively denying, Plaintiffs' Motion to Appoint Receiver and proceed only with the threshold issues of Coinbase's Emergency Motion and Motion to Compel Arbitration.

Dated: January 23, 2023

**HOLLAND & KNIGHT LLP**

Cynthia G. Burnside, Esq.
Georgia Bar No. 097107
Caroline J. Tanner, Esq.
Georgia Bar No. 392580
1180 Peachtree Street, N.W., Ste. 1800
Atlanta, GA 30309
(404) 817-8500
(404) 881-0470
cynthia.burnside@hklaw.com
caroline.tanner@hklaw.com

**DLA Piper LLP (US)**

/s/ *Christopher G. Campbell*
Christopher G. Campbell, Esq.
Georgia Bar No. 789533
Emily B. Marshall, Esq.
Georgia Bar No. 131072
Sarah M. Carrier
Georgia Bar No. 377848
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 736-7800
(404) 682-7800 (facsimile)
Christopher.Campbell@dlapiper.com
Emily.Marshall@dlapiper.com
Sarah.Carrier@dlapiper.com

Matthew F. Miller, *Admitted Pro Hac Vice*
Isabelle Ord, *Admitted Pro Hac Vice*
Matthew.Miller@us.dlapiper.com
Isabelle.Ord@us.dlapiper.com

*Attorneys for Coinbase Global, Inc. and Coinbase, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of January, 2023, I caused the

foregoing document to be electronically filed with the Clerk of Court using

CM/ECF, and that such filing provided electronic notice to all counsel of record.


<u>*/s/ Christopher G. Campbell*</u>
Christopher G. Campbell

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing brief has been prepared in accordance with the font and type specifications required under Northern District of Georgia Local Rules 5.1 and 7.1

_/s/ Christopher G. Campbell_
Christopher G. Campbell