**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

George Kattula, Ashley Adams, John Alexander, Kenneth Axelsson, Tara Bennett, Al Bigonia, Joseph Blumetti, Darren Bradley, Dallas Bray, Franklin Calderón, Wayne Colt Carter, Allan Chiulli, Lolletta Cohen, Laleh Dallalnejad, Erick Eliezaire, Mark Gambell, Rodrigo Garcia, Mark Girshovich, Charles Glackin, Eldon Hastings, Roger Haston, Travis Houzenga, Dan Hyatt, Bobby Johnson, Jane Krieser, Eric Larson, Chris Longstreth, Ngoun Mang, Lisa Marcial, Bianca McWilliams, Victor Mechanic, Mihail Mihalitsas, Brady Lee Nessler, Frank Onimus, Vilasini Pillai, William Plyler, Edward Polhill, Steven Paperno, Luis Rodriguez, Earlando Samuel, Von Sims, Varun Singh, Larry Sowell, Vesselina Spassova, Richard Stefani, Christopher Suero, Natalie Tang, Daniel Tucker, Fatima Waheed, Eric White, Bob Whittington, and Karen Wright, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

Coinbase Global, Inc., and Coinbase Inc.,

Defendants.

CIVIL FILE ACTION

NO. 1:22-cv-03250-TWT

**CLASS ACTION**

JURY TRIAL DEMANDED

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO APPOINT A RECEIVER**

Plaintiffs, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), respectfully file this Reply Brief in Support of Motion to Appoint a Receiver (the "Receivership Motion") for the limited purpose of examining certain books, records and accounts of Defendants Coinbase Global, Inc. and Coinbase, Inc. (collectively "Coinbase" or "Defendants.").

## I. Introduction

As set forth in the Consent Order that Coinbase, Inc. entered with the New York State Department of Financial Services ("NYSDFS") on January 3, 2023, Coinbase has a long history of being unable to manage its accounts or identify and remove bad actors from its platform.[1] Notwithstanding: (1) supervisory examination of Coinbase in May 2020; (2) the engagement of an Independent Consultant to improve Coinbase's compliance and enforcement investigation in 2021; and (3) nine months of Independent Monitor oversight, ***"[w]ork remains outstanding to the present"*** on Coinbase's compliance program with regard to onboarding and transaction monitoring as it relates to bad actors.[2] Thus, Coinbase's

---

[1] *See* Consent Order [ECF 59-1 at 2-3] (NYSDFS finding problems with Coinbase's compliance procedures from the period from July 1, 2018 through December 31, 2019 with "further improvement required" as of January 3, 2023).

[2] *Id.* at 4-6 (emphasis added).

process to identify and eliminate bad actors on its platform is **still** being constructed, leaving Plaintiffs further vulnerable to account hacks and theft.

Plaintiffs are all too aware of Coinbase's systemic shortcomings. Plaintiffs often experience delays of weeks and months to receive any response from Coinbase (if they receive any information at all), and frequently receive little to no information as to how and why their assets were stolen or how bad actors were able to pillage their accounts.[3] Plaintiffs are told to delay speaking with the authorities or take action, often to their detriment, as chances for recovery are dependent on prompt diligence.[4] Coinbase fails to (or is often slow to) help or inform customers whose stolen assets are transferred *to accounts on its own platform*.[5] Meanwhile, more customers become victims and Coinbase profits.

Because of its serious systemic issues, Coinbase has agreed to pay a 50 million dollar fine, it is required to invest an additional 50 million dollars in compliance, and

---

3 *See, e.g.*, Declarations of David Garcia [ECF 32 at 3] and Kelechukwu Osuji [ECF 39 at 4], both of whom communicated in vain with Coinbase about how their accounts somehow lost cryptocurrency that should not be movable.

4 *See* Herman Decl., Ex. C [ECF 24-3 at 3] (providing a copy of https://help.coinbase.com/en/pro/other-topics/other/how-to-send-a-complaint, which demands consumers "complete the Coinbase Complaint Resolution Process before contacting any regulatory bodies…"); Decl. of Lorne Tritt [ECF 59-2] (explaining how Coinbase encouraged Mr. Tritt to be patient for over a month before informing him his account had been looted by another Coinbase trading account).

5 *See* Johnson Decl. [51-1]; Tritt Decl. [ECF 59-2].

it will be subjected to another year of oversight by the Independent Monitor, through January 2024, extendable at the sole discretion of NYSDFS.[6]

Coinbase's long, and ongoing, inability to safeguard its customers has resulted in tens of millions – if not hundreds of millions – of dollars in losses, and it continues to cost Coinbase's customers millions. Through its attempts to compel arbitration, Coinbase wishes to sweep these problems under the rug and to shield these profound failings from public scrutiny, despite this being an ongoing crisis which requires judicial supervision. Coinbase's failure to address the extent to which bad actors remain on its platform, its lackadaisical approach to investigation and security, and its unwillingness or inability to effectively tackle what has happened, and continues to happen, to customers who have been the victims of bad actors are why Plaintiffs maintain that a receiver should be appointed.

## II. ARGUMENT

### A. This Court Has Jurisdiction

Defendants suggest that this case "should already be in arbitration," yet they elected not to file their Motion to Compel Arbitration ("Arbitration Motion") until ***over five months after*** this case was filed, and notably, ***over two months after*** Plaintiffs sought equitable relief to remedy Coinbase's misconduct. Defendants now

[6] Consent Order [ECF 59-1 at 22-24]

contend that the mere filing of their Arbitration Motion should moot or act as a stay of the Receivership Motion and this Court's jurisdiction.[7] However, "the mere existence of an arbitration agreement does not divest a court, state or federal, of jurisdiction."[8] Contrary to Coinbase's claim, even if a court sends claims to arbitration, the Federal Arbitration Act ("FAA") does not take away the Court's jurisdiction.[9] Furthermore, the mere filing of a motion for arbitration does not rob this Court of its authority to grant previously requested equitable relief.[10] As shown

---

[7] Defendants' Memorandum [ECF 63 at 3-4].

[8] *See Frank v. Am. Gen. Fin., Inc.,* 23 F.Supp.2d 1346, 1349 (S.D. Ala. 1998); *see also* 9 U.S.C. § 3; *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (holding court's dismissal was in error and action should be stayed pending arbitration); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015) ("[S]ection 3 qualifies the mandatory nature of any stay it authorizes by requiring a party to apply for the stay.").

[9] In Defendants' Memorandum, Coinbase cites *Thomas v. Sherwin P. Robin & Assocs., P.C.*, No. 1:16-CV-2529-AT-AJB, 2017 WL 8186864, at *1 (N.D. Ga. Sept. 7, 2017) for the proposition that the presence of a valid arbitration clause divests a court of subject matter jurisdiction [ECF at 4-5], misstating the issue presented as the holding of the case. The *Thomas* Court recognized that a Court could maintain jurisdiction if a valid and binding arbitration agreement was at issue holding, "Under the FAA, a court must either stay or dismiss a lawsuit and compel arbitration if there is a valid arbitration agreement." *Thomas*, 2017 WL 8186864, at *2.

[10] *See Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981, 984 (9th Cir. 2010) (holding that when the requirements for granting the equitable relief of an injunction are satisfied, "a district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process…."). Thus, even if this matter ultimately winds up in arbitration months from now, this Court is not

below and through Plaintiffs' Memorandum in Support of Motion to Appoint a Receiver ("Plaintiffs' Memorandum"), the equitable relief of a receiver is warranted and will maintain the *status quo* in this case.

**B. Coinbase's Opposition Is an Untimely Motion for Reconsideration**

On November 18, 2022, Coinbase moved to stay Plaintiffs' Receivership Motion until its anticipated motion to compel arbitration was filed and adjudicated.[11] While the Court provided Defendants additional time to respond to the Receivership Motion, it denied Defendants' request to postpone resolution of Plaintiffs' Motion until after the issue of arbitration was resolved.[12]

In an attempt to avoid the procedural posture of this case and relitigate what this Court resolved on December 7, 2022, Defendants suggest that staying Plaintiff's Receivership Motion will "get this case back on track" and that this Court should decide its Arbitration Motion first.[13] Defendants bold language fails to disguise its attempts to move this Court to reconsider its prior ruling denying its request for a stay of the Receivership Motion, 47 days after the Court's order was entered.

---

precluded from resolving the fully briefed, ripe for adjudication Receivership Motion.

[11] Defendants' Memorandum in Support of Emergency Motion to Require Disclosure of Plaintiff Identities [ECF 47 at 16].

[12] *Minute Sheet* [ECF 53].

[13] *See* Defendants' Memorandum [ECF 63 at 2, 4].

Under Local Rule 7.2(E), the 28-day period for Defendants to seek reconsideration expired January 4, 2023, two and a half weeks before Coinbase filed its Memorandum of Law Opposing Plaintiffs' Motion to Appoint Receiver ("Defendants' Memorandum"). To the extent that Defendants' Memorandum seeks a stay, such request should be denied out of hand as untimely.

**C. The Facts of this Case Warrant a Receiver Being Appointed**

**1. Coinbase's Agreeing to Independent Monitor Oversight in New York for a Second Year and a 50 Million Investment in Compliance Supports the Appointment of a Receiver**[14]

As set forth in the Consent Order that Coinbase, Inc. entered with NYSDFS, Coinbase has a long history of being unable to know its customers, manage their

---

[14] Coinbase contends that if Plaintiffs' Receivership Motion is granted, such motions will become "routine motions practice in all types of consumer cases." Defendants' Memorandum [ECF 63 at 1]. Coinbase ignores the thousands of customer complaints about its platform, which caused the CFPB to question whether platforms like Coinbase effectively identify and stop fraud, as well as the specific claims in this action about Coinbase's failure to keep its customers' assets secure. Plaintiffs' Memorandum [ECF 23-1 at 9]. This is far from a typical consumer matter. Moreover, other problem cryptocurrency companies have had Independent Examiners and receivers appointed to examine cryptocurrency exchanges and concerns and protect consumers. *See, Order Approving the Appointment of Chapter 11 Examiner* dated September 29, 2022, *In re Celsius Network LLC,* Case No. 22-10964 (MG) [ECF 923]; *SEC Halts Crypto Asset-Related Fraud Victimizing Latino Investors Securities and Exchange,* Litigation Release No. 25547, October 3, 2022 https://www.sec.gov/litigation/litreleases/2022/lr25547.htm. *See also In re FTX Trading LTD, et al.,* Case No. 22-11068 (JTD), DKT 176 (Dec. 1, 2022) (Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner).

accounts or identify and remove bad actors from its platform.[15] After "Coinbase's compliance system failed to keep up with" increased demand and became "overwhelmed," NYSDFS took the extraordinary step of installing an Independent Monitor at Coinbase in April 2022 "to assess the current status of Coinbase's Compliance Program and to assist the Company in addressing deficiencies."[16] Even with the supervision of an Independent Monitor, Coinbase has not completed the due diligence necessary to assess and thus monitor accounts of problem actors who opened Coinbase accounts prior to September 2021.[17] Moreover, Coinbase is undertaking a full "refresh" of ***all*** of its customers onboarded before its risk rating system was developed under the supervision of the Independent Monitor.[18] Coinbase's process to identify bad actors on its platform remains a work in progress.

While Plaintiffs' Receivership Motion was pending, Coinbase agreed to the January 3, 2023 Consent Order with NYSDFS wherein it conceded that it has significant unresolved security and customer service problems.[19] Yet Coinbase,

---

[15] *See* Consent Order [ECF 59-1 at 2-3] (NYSDFS finding problems with Coinbase's compliance procedures from the period from July 1, 2018 through December 31, 2019 with "further improvement required" as of January 3, 2023).
[16] *Id.* at 2-3, 6.
[17] *Id.* at 12-14.
[18] *Id.* at 21.
[19] *See* Plaintiffs' Second Notice of Supplemental Support for Motion to Appoint a Receiver [ECF 59, Ex. A].

which notably had not disclosed to the Court or Plaintiffs that it was subject to the oversight of an Independent Monitor, now claims that the Consent Order is irrelevant to the Receivership Motion. To the contrary, through the Consent Order, Coinbase has conceded that its security is inadequate and revealed that it has a demonstrable persistent difficulty in identifying possible and actual terrorist financers, money launderers, thieves, fraudsters and/or other criminal and suspicious actors, while having a history of being slow to report criminal activity on its platform to the authorities, despite a legal obligation to do so promptly. This alone demonstrates Coinbase's inability to properly manage its accounts and illustrates why a receiver is necessary to determine what has happened to Plaintiffs' assets.

**2. The Ongoing Threats to Plaintiffs' Accounts Demonstrate the Need for a Receiver**

Through the First Amended Complaint ("FAC") and Plaintiffs' Memorandum, Plaintiffs have provided concrete examples of a few of the thousands of Coinbase customers whose accounts have been hacked, looted and emptied, often without explanation and/or recourse. Coinbase appears to argue that there is no impending threat warranting a receiver because once Coinbase allows its customers to be victimized, there is no exigency. This is flatly wrong. Plaintiffs are suffering more harm each day. Unauthorized intrusion into accounts continues to occur, as indicated by the supplemental materials Plaintiffs filed with this Court in support of

their Receivership Motion, where two accounts alone suffered multi-million dollar losses. Moreover, a receiver may be able to identify patterns in looted accounts that could protect members of the class.

### 3. All Factors Weigh in Favor of A Receiver[20]

#### a. Fraudulent Activity Has Occurred, and It Will Continue, To Occur If a Receiver Is Not Appointed.

Coinbase asserts that there is no proof that it is guilty of fraudulent activity. However, Coinbase does not, and cannot, dispute that fraud routinely occurs on its platform and that Coinbase benefits handsomely. Coinbase has, through its actions or inaction, allowed Plaintiffs to be victimized by the following fraudulent schemes:

(1) Accounts are looted[21];

(2) Accounts are placed in other people's names and then pillaged[22];

---

[20] There is no precise formula for determining whether receivership is appropriate. *Manuel v. Gembala,* No. 7:10-CV-4-FL, 2010 WL 38604007, at *6 (E.D.N.C. Sept. 30, 2010). Factors to be considered include: (1) whether fraudulent activity has or will occur, (2) the validity of the claim, (3) the danger that property will be lost or diminished in value, (4) inadequacy of legal remedies, (5) availability of less severe equitable remedy, and (6) the probability that a receiver may do more harm than good. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316-17 (8th Cir. 1993). While the appointment of a receiver is an extraordinary remedy, the decision to appoint a receiver remains a matter resting in the sound discretion of the District Judge. *LNV Corp. v. Harrison Family Business, LLC*, 132 F.Supp.3d 683, 689 (D. Md. 2015) (citing *Lias v. United States*, 196 F.2d 90, 92 (4th Cir. 1952)).

[21] *See, e.g.,* Decl. of Al Bigonia [ECF 45]; Decl. of Daniel Tucker [ECF 41].

[22] *See, e.g.,* Decl. of Darren Bradley [ECF 25 ("Alexander Ross")], Decl. of Eric Larson [ECF 36 ("Linda")].

(3) Asset are stolen *after* Plaintiffs notify Coinbase of unauthorized attempts to access their accounts[23];

(4) Wash trading, clearly suspicious activity in which thousands of transactions in a short period of time result in losses in a victim's Coinbase account and profits in a bad actor's Coinbase account[24], while Coinbase garners massive fees[25].

In addition to the fraud Coinbase has committed described in Plaintiffs' Memorandum,[26] it is without question that Coinbase is allowing fraudulent activity to run rampant on its platform and either is unwilling or it is unable to stop the same.

**b. Plaintiffs Have Valid Claims, as They Have a Right to the Assets at Issue**

Plaintiffs have provided ample evidence of the: (1) theft, (2) unauthorized intrusion into their accounts, and (3) Coinbase's failure to provide adequate, and in some cases any, information concerning how and why Coinbase allowed bad actors

---

[23] *See, e.g.,* Decl. of Eric Larson [ECF 36]; Decl. of Vesselina Spassova [ECF 40].
[24] *See, e.g.,* Decl. of Bruce Johnson [ECF 51-1]; Decl. of Lorne Tritt [ECF 59-2].
[25] Coinbase claims it is allowed to reap profits from fraudulent, illegal activities harming its customers because it told Plaintiffs that it would collect fees on "every transaction." Defendants' Memorandum [ECF 63 at 10]. In essence, Coinbase, which generated revenues on transactions "including 'approximately $1.2 billion' in fees in the first quarter of 2022 alone" [*id.* at 11], concedes that allowing fraud on the platform is profitable.
[26] *See* Plaintiffs' Memorandum [ECF 23-1 at 12, 18-19].

to access accounts or why Coinbase will not allow Plaintiffs unfettered access to their own assets. Coinbase does not, and cannot, dispute that the assets and accounts at issue belong to Plaintiffs.

This case is clearly distinguishable from *Gill v. Hartshorn*, No. 4:12-CV-77 (CDL), 2014 WL 1271187 (M.D. Ga. Jan 9, 2014), which Coinbase cites.[27] There, it was unclear whether the movants had any interest in the trust over which they were seeking a receivership. Without such a showing, movants lacked standing to seek the appointment of a receiver. *Id.* at *1. Plaintiffs here seek to maintain the *status quo* and determine why Coinbase cannot or will not stop the plundering of *their own* accounts. There is no question that the assets and accounts at issue belong to them and that they, thus, have an interest in the same.

**c. As Coinbase Continues to Allow Widespread Fraud, The Risk that Property Will Be Lost or Diminished Continues**

Coinbase contends that because it is allegedly financially sound, the theft of Plaintiffs' assets is not a problem to be addressed with immediacy. In other words, according to Coinbase, it is so profitable that the alleged misconduct is immune from public oversight because the growing class of victims can be compensated one day from Coinbase's revenues, which include ill-gotten fees from unauthorized

[27] Defendants' Memorandum [ECF 63 at 11].

transactions. To the contrary, the ongoing and unabated security breaches at Coinbase are matters of grave and immediate concern and something that a receiver can, and should, be appointed to examine and prevent. [28]

A court may appoint a receiver where, as here, assets are wasted or dissipated, fraud exists, or assets must be preserved.[29] It is beyond dispute that such waste, dissipation and fraud exist here and continue to occur.

Further, cryptocurrency is volatile and many platforms thought to be sound have proven to be unstable.[30] Auditors have assured the health of cryptocurrency trading platforms that now are in bankruptcy.[31] Moreover, the failure of one cryptocurrency platform has resulted, and may further result, in the failure of

---

[28] This is not like *Clough Mktg. Servs., Inc. v. Main Line Corp.*, 2007 WL 496739 (N.D. Ga. Feb. 13, 2007), where a plaintiff sought a receiver in an attempt to assure post judgment recovery. *Id.* at *4. Nor is this like *U.S. Bank Nat'l Ass'n v. LG-328 Huntsville*, AL, LLC, No. 5:17-CV-01378-AKK, 2017 WL 5668392, where the movant failed to prove the existence of fraud or that the defendant was wasting or otherwise dissipating assets. *Id.* at *1. Plaintiffs in this case are suffering ongoing losses and their assets remain at risk.

[29] *See Saluck v. Rosner,* 1999 WL 46620 at *2 (E.D.Pa. Jan. 6, 1999); *see also LNV Corp.*, 132 F. Supp.3d. at 694 (holding that where there was "imminent danger that LNV's interest in HFB will be diminished in value in the absence of the appointment of a receiver," the appointment of the same for a profitable company was warranted).

[30] *See* Plaintiffs' Memorandum [ECF 23-1 at 1, fn. 1].

[31] *See* Steven Foley, *FTX collapse puts US auditors in the spotlight*, Nov. 14, 2022, https://www.afr.com/companies/financial-services/ftx-collapse-puts-us-auditors-in-the-spotlight-20221114-p5by5o.

others.[32] Much like its assurances to customers that their assets will be safe and secure on the Coinbase platform,[33] Coinbase's assurances that it will remain solvent could become one more of its hollow promises.

In addition, there are spoliation concerns. According to NYSDFS, "Coinbase's record keeping of suspicious activity investigations and reporting was insufficient."[34] Further, in numerous cases, records regarding Plaintiffs' accounts and unauthorized transactions have vanished.[35] As this is tax season, determining whether Plaintiffs, for example, have suffered losses or gains, is critical information about which continuing delay will cause Plaintiffs expense and further irreparable harm. Thus, Defendants' record keeping failures warrant a receiver to review Plaintiffs' accounts before further information is altered or lost.

---

[32] Vicky Ge Huang, Caitlin Ostroff and Akiko Matsuda, *Crypto Lender Genesis Files for Bankruptcy, Ensnared by FTX Collapse*, Jan. 20, 2023, https://www.wsj.com/articles/crypto-lender-genesis-files-for-bankruptcy-ensnared-by-ftx-collapse-11674191903?tpl=br.

[33] *See* Plaintiffs' Memorandum [ECF 23-1 at 3-4]

[34] Consent order [ECF 59-1 at 19].

[35] *See, e.g.,* Decl. of Allan Chiulli [ECF 31 at ¶ 9 ("The transaction history records for my Coinbase and Coinbase Pro accounts do not show the unauthorized, fraudulent transactions in my accounts on November 17, 2022.")]; *see also* FAC [ECF 16 at ¶ 377 (Plaintiff Victor Mechanic stating that the "Account History" of his account no longer shows the unauthorized transactions that depleted his account)].

Furthermore, Coinbase ignores that Plaintiffs have sought equitable relief in their First Amended Complaint.[36] There, Plaintiffs seek relief to stop the very acts and omissions that give rise to their Receivership Motion and to take measures to properly monitor and protect customer accounts and for an accounting.

**d. Plaintiffs Seek Modest, Narrowly Tailored Relief that Will Do More Good than Harm**

In repeating that receivership is an "extreme" remedy, Defendants attempt to treat this statutory relief as an aberration. However, this case – where Defendants are unwilling or unable to stop rampant fraud, lack transparency, and have engaged in troubling behavior with client accounts with which Coinbase has been entrusted – is precisely the type of situation that warrants the appointment of a receiver.

Without explaining how, Defendants claim that a receiver would be "extraordinarily intrusive and expensive."[37] But that simply is not true. Defendants contend that Coinbase, Inc. had "a net income of $3.6 billion in 2021."[38] Certainly the cost of a receiver will pale in comparison. Further, Coinbase, Inc. has nearly one hundred million users. Plaintiffs should be a small fraction of those users and thus, the accounts and records in need of review should not be significant. If, however,

---

[36] *See* FAC [ECF 16 at 151-153].
[37] Defendants' Memorandum [ECF 63 at 16].
[38] *Id.* [ECF 63 at 21-22].

victims like Plaintiffs are such a substantial percentage of Coinbase's nearly hundred million user customer base, that raises troubling questions which themselves are grounds for the appointment of a receiver. Moreover, if Defendants' books and records are in proper order, then enabling a receiver to review the records of this discrete group of customers should be relatively simple and straightforward. If they are not, this is all the more reason for a receiver to inspect them to see what issues exist and report the same to the Court.

## III. Conclusion

For the foregoing reasons and those set forth in Plaintiffs' Memorandum, Plaintiff's Motion for Appointment of a Receiver should be GRANTED.

Respectfully submitted, this 6th day of February, 2023.

HERMAN JONES LLP

*/s/ John C. Herman*
John C. Herman
(Georgia Bar No. 348370)
Serina M. Vash (admitted pro hac vice)
Candace N. Smith
(Georgia Bar No. 654910)
Connely Doizé
(Georgia Bar No. 663453)

HERMAN JONES LLP
3424 Peachtree Road, N.E., Suite 1650
Atlanta, Georgia 30326
Telephone: (404) 504-6500
Facsimile: (404) 504-6501
jherman@hermanjones.com
svash@hermanjones.com
csmith@hermanjones.com
cdoize@hermanjones.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH LR 5.1**

I hereby certify that the foregoing document is written in 14-point Times New Roman font in accordance with Local Rule 5.1.

*/s/ John C. Herman*
John C. Herman
(Ga. Bar No. 348370)
HERMAN JONES LLP

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing document with the Clerk of the District Court, and the CM/ECF system will send notification of such filing to all attorneys of record.

Dated: February 6, 2023

*/s/ John C. Herman*
John C. Herman
*Counsel for Plaintiffs*