**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

George Kattula, Ashley Adams, John Alexander, Kenneth Axelsson, Tara Bennett, Al Bigonia, Joseph Blumetti, Darren Bradley, Dallas Bray, Franklin Calderón, Wayne Colt Carter, Allan Chiulli, Lolletta Cohen, Laleh Dallalnejad, Erick Eliezaire, Mark Gambell, Rodrigo Garcia, Mark Girshovich, Charles Glackin, Eldon Hastings, Roger Haston, Travis Houzenga, Dan Hyatt, Bobby Johnson, Jane Krieser, Eric Larson, Chris Longstreth, Ngoun Mang, Lisa Marcial, Bianca McWilliams, Victor Mechanic, Mihail Mihalitsas, Brady Lee Nessler, Frank Onimus, Vilasini Pillai, William Plyler, Edward Polhill, Steven Paperno, Luis Rodriguez, Earlando Samuel, Von Sims, Varun Singh, Larry Sowell, Vesselina Spassova, Richard Stefani, Christopher Suero, Natalie Tang, Daniel Tucker, Fatima Waheed, Eric White, Bob Whittington, and Karen Wright, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

Coinbase Global, Inc., and Coinbase Inc., Defendants.

**Case No. 1:22-cv -03250-TWT**

**COINBASE INC.'S SUR-REPLY IN OPPOSITION TO MOTION TO APPOINT A RECEIVER**

Plaintiffs' Reply to their Motion to Appoint a Receiver ("Plaintiffs' Reply" and "Plaintiffs' Motion", respectively) further illustrates that Plaintiffs' Motion is improper, not only because it seeks to evade the effects of the Parties' enforceable arbitration agreements, but also because it seeks class-wide relief without satisfying the requirements of Federal Rule of Civil Procedure 23. The new facts and cases raised in the Reply do not change the conclusion that Plaintiffs should be sent to individual arbitration, and their attempts to put the cart before the horse by seeking class-wide equitable relief should be rejected.

## I. Plaintiffs' Reply Asserts That Their Motion Seeks Broad Class-wide Relief Without Satisfying The Requirements Of Fed. R. Civ. Proc. 23.

Plaintiffs' Reply asserts that Plaintiffs seek class-wide relief without complying with Rule 23's requirements for class certification. Plaintiffs' Reply is at odds with Plaintiffs' Motion, which argued that the request for receiver was "narrowly tailored" to focus on determining "the status quo of plaintiff accounts." [*See* Dkt. 23-1, p. 5; 71, p. 1, 15.] Plaintiffs' stated position in their Motion was inconsistent with their proposed order, which proposed a receiver with broad, sweeping powers. [*See, e.g.*, Dkt. 23-2, pp. 11-16 (Proposed Order).]

Whatever inconsistency existed between Plaintiffs' stated position in the Motion and their Proposed Order has been resolved by Plaintiffs' Reply, which makes clear that Plaintiffs seek a ***broad receivership***, complete ***with broad discovery powers***, that extend ***to an entire putative class.*** Specifically, Plaintiffs' Reply defines "Plaintiffs" to include both the named Plaintiffs and the putative class members. [Dkt. 71, p. 2.] But then Plaintiffs' Reply concludes by stating: "Coinbase, Inc. has nearly 100 Million users. *Plaintiffs* should be a small fraction of those users and thus, the accounts and records in need of review should not be significant . . ." [Dkt. 71, p. 16 (emphasis added).] Plaintiffs' prior arguments suggesting to the Court that they have "narrowly tailored" their request for receivership to "named Plaintiffs," are flatly contradicted by this single statement in their Reply.

That Plaintiffs have reserved this admission for their Reply is not surprising. Plaintiffs know this may be their only chance to get class-wide relief given (a) Plaintiffs' enforceable arbitration agreements and (b) the varied and unique nature of each individual plaintiff's proposed claims, as demonstrated by the declarations that Plaintiffs submitted in support of their Motion and Reply. Coinbase is not aware of any authority (and Plaintiffs have cited none) supporting Plaintiffs' efforts to obtain any class-wide relief, equitable or otherwise, before a class has actually been certified. Plaintiffs' Motion should be denied for this reason alone.

## II. Plaintiffs Cannot Satisfy The Legal Or Factual Requisites For The Extreme Relief They Request.

Plaintiffs also reference new case law and other authorities for the first time in their Reply in an attempt to bolster their argument that they have met the requirements for appointment of a receiver. But the Reply confirms that Plaintiffs cannot satisfy the requirement that there exists a threat of fraud by Coinbase that would frustrate Plaintiffs' efforts to recover any alleged damages. This element cannot be based upon the alleged bad actions of unnamed third parties.

### A. Neither Plaintiffs' Cases Nor The Consent Order Satisfies The Fraud Requirement For Appointment Of A Receiver.

The cases cited by Plaintiffs for the first time in their Reply do nothing to bolster Plaintiffs' arguments that a receiver is appropriate in this case. In fact, Plaintiffs did not cite a single case even remotely analogous to this one. Indeed, three of the seven authorities cited in Plaintiffs' Reply (notes 14, 20 and 29), actually *declined* to grant motions to appoint receiverships. *Manuel v. Gembala*, 2010 WL 38604007, at *6 (E.D.N.C. Sept 30, 2010), *Saluck v. Rosner*, 1999 WL 46620 at *3 (E.D. Pa. Jan. 6, 1999); *In re FTX Trading, LTD, et al.* Case No. 22-11068 (Bankr.

D. Del 2022), Motion of the United States Trustee for Entry of an Order Directing Appointment of an Examiner [Dkt 176.][1]

Additionally, two of the authorities cited by Plaintiffs in notes 14, 20 and 29, involved debtors *in bankruptcy*—a fact not obvious from the truncated citations in note 14 of the Reply. *See In re Celsius Network LLC*, Case No. 22-19-0964 (Bankr. S.D.N.Y. 2022); *In re FTX Trading, LTD, et al.* Case No. 22-11068 (Bankr. D. Del. 2022). For this reason, these cases are inapposite.

Plaintiffs' remaining new authorities similarly do not support their argument that injury perpetrated by third-parties who allegedly accessed their accounts is the type of fraudulent activity sufficient to support a receivership request. In both *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314 (8th Cir. 1993) and *LNV Corp. v. Harrison Family Bus., LLC*, 132 F. Supp. 3d 683 (D. Md. 2015), which are not binding in this jurisdiction, the courts confirmed or appointed receivers only because a *debtor defendant* had committed fraud or actions with the intention of frustrating the plaintiffs' ability to collect on a judgment. *See Aviation Supply Corp.*, 999 F.2d, at 316 (affirming appointment of a receiver where the debtor transferred assets to a relative while the writ of execution was pending, noting that these facts

[1] Plaintiff's Reply, which was filed on February 6, cites the U.S. Trustee's Motion To Appoint an Examiner, which was *denied* on February 21, 2023. *See* Order Denying Motion to Appoint an Examiner [Dkt 746].

were two red flag indicia of fraud); *LNV Corp.*, 132 F. Supp. 3d at 693 (appointing a receiver over a corporate debtor that defaulted on loans where its profitable subsidiary paid no rent for use of property owned by the debtor, and used its profits to pay its own vendors, holding that the subsidiary's decision to repay its vendors had come at the expense of the debtor's ability to repay its loan obligations.) Similarly, the SEC Litigation Release relied upon by Plaintiffs (Reply, n.14), imposed a receiver upon companies owned and operated by individuals accused of perpetrating a Ponzi scheme and diverting customer funds to their own personal use and investment in real estate. *See SEC Halts Crypto Asset-Related Fraud Victimizing Latino Investors*, LR No. 25547 *re SEC v. Mauricio Chavez*, *et al.*, No. 4:22-cv-03359 (S.D. Tex 2022) (sec.gov/litigation/litreleases/2022/lr25547.htm).

Here, in contrast to all the forgoing cases and other authority relied upon by Plaintiffs in their Reply, Coinbase is not a debtor in bankruptcy, Plaintiffs are not seeking to collect on a judgment, and Plaintiffs have made no credible allegations—let alone presented any admissible evidence——that Coinbase has perpetrated or will perpetrate fraud. Absolutely none of Plaintiffs' newly-cited cases support the appointment of a receiver over an operating, publicly-traded company with audited financial statements based upon *ad hoc* customer complaints that their accounts have been compromised by *third party bad actors*.

Plaintiffs' reliance in their Reply upon the Consent Order between Coinbase, Inc. and the New York State Department of Financial Services ("NYDFS") also does not help Plaintiffs satisfy the fraud requirement. First, the Consent Order is irrelevant to Plaintiffs' claims. The NYDFS investigation and resulting Consent Order focused on Coinbase Inc.'s compliance with Bank Secrecy Act ("BSA") and anti-money laundering ("AML") regulations. Those regulations require NYDFS-regulated institutions like Coinbase, Inc. to maintain a Transaction Monitoring System ("TMS") designed "for the purpose of monitoring transactions *after their execution* for potential BSA/AML violations and suspicious activity reporting," that is, for assessing whether ***customers themselves*** have engaged in unlawful activity. 23 NYCRR 504.3 (emphasis added). Such transaction monitoring is entirely separate and serves a different purpose from Coinbase's security measures designed to prevent fraudulent account takeovers by third parties in real-time, such as those alleged by Plaintiffs in this case, and therefore bears no relationship to Plaintiffs' claims.

Separately, nothing in the Consent Order suggests that Coinbase is engaging in evasive maneuvers designed to frustrate Plaintiffs' claims, such as those demonstrated by the debtors in *Aviation Supply* (transferring security interest in assets to relative while writ of execution was pending) and *LNV Corp.* (allowing

family owned subsidiary to use corporate debtor's property rent-free). In fact, the Consent Order recognized that Coinbase, Inc. "has improved its compliance systems and has made progress in remediating its compliance weaknesses." *Id.* at 3. Even Plaintiffs understood that Coinbase's operations during this period were impacted by its "tremendous growth"—not intentional misconduct by Coinbase. [*See* Dkt. 16, Am. Compl. ¶ 79]. Thus, none of Plaintiffs' allegations or newly-cited cases change the conclusion that Plaintiffs have not and cannot show the existence of a threat of fraud by Coinbase necessary to justify the extraordinary remedy of appointing a receiver in this case.

**B. Plaintiffs Have Not Alleged Fraud Committed By Coinbase.**

Recognizing their lack of evidence of the type of fraud required for appointment of a receiver, Plaintiffs attempt to argue in their Reply that various alleged actions or inactions by Coinbase satisfy this requirement. [Dkt. No. 71, p. 10 and n. 20.] But Plaintiffs never explain how they were actually defrauded by Coinbase. Instead, most, if not all of Plaintiffs' complaints of "fraud" by Coinbase concern matters that are specifically and expressly disclosed or permitted in the terms of the User Agreements they accepted.

Consider the following examples:

| **Plaintiffs' Allegations**[2] | **Terms of the User Agreement**[3] |
|---|---|
| Coinbase "coerc[ed]" Plaintiffs to "agree to new, less favorable terms of service." | **1.2 Terms**. We may amend or modify this Agreement at any time by posting the revised agreement on the Coinbase Site and/or providing a copy to you. . . . Your continued use of the Services after posting of a Revised Agreement constitutes your acceptance. . . |
| Coinbase failed to tell customers that Coinbase makes money on every transaction . . . | **3.3 Fees.** In general, Coinbase makes money when you purchase or sell digital currency on our Site. A full list of Coinbase fees for your Coinbase Account can be found on our Pricing and Fees Disclosures page. By using Coinbase Services you agree to pay all applicable fees.<br>**3.7 Unauthorized and Incorrect Transactions.** When a Digital Currency or USD transaction occurs using your credentials, we will assume that you authorized such transaction, unless you notify us otherwise. |
| Coinbase made representations and "guarantees" as to the security of Plaintiffs' assets . . . | **2.6.3 Acknowledgement of Risk.** You acknowledge that Digital Currency is not subject to protections or insurance provided by the Federal Deposit Insurance Corporation or the Securities Investor Protection Corporation.<br>**3.7. Unauthorized and Incorrect Transactions.** When a Digital Asset Transaction or USD transaction occurs using your credentials, we will assume that you authorized such transaction, unless you notify us otherwise. If you believe you did not authorize a particular transaction or that a transaction was incorrectly carried out, you must contact us as soon as possible via our help page at https://help.coinbase.com or by phone at (888) 908-7930 (international call charges may apply). |

[2] *See* Dkt. No. 71, p. 11, n. 26, incorporating Dkt. No. 23-1, pp. 18-19.

[3] See Decl. of Suellen Black (Dkt. No. 62, Ex. 3).

| | |
|---|---|
| | It is important that you regularly check your USD Wallet, Digital Asset Wallet, and any other wallets accessible through the Coinbase Site and your transaction history to ensure you notify us as soon as possible of any unauthorized or incorrect transactions. Reporting an unauthorized transaction does not guarantee Coinbase will be able to reverse the transaction or reimburse you for the transaction. **6.2 Security Breach**. If you suspect that your Coinbase Account or any of your security details have been compromised or if you become aware of any fraud or attempted fraud or any other security incident (including a cybersecurity attack) affecting you and/or Coinbase . . . you must notify Coinbase Support as soon as possible . . . |
| Coinbase exercised "self-help by illegally seizing" Plaintiffs' account assets and "failing to account for or return transaction fees for demonstrated unauthorized transfers . . ." | **3.10 Reversals & Cancellations.** You cannot cancel, reverse, or change any transaction marked as complete or pending. . . . **4.9 Debts**. In the event that there are outstanding amounts owed to us hereunder, including in your Coinbase Account, Coinbase reserves the right to debit your Coinbase Account or Coinbase Pro Account accordingly and/or to withhold amounts from funds you may transfer from your Coinbase Pro Account to your Coinbase Account. |

From these allegations and others in the Amended Complaint it is clear that the crux of Plaintiffs' cases are that Coinbase mishandled their customer service

complaints or improperly credited or debited their accounts before or during the dispute resolution procedure——claims that emanate directly from the parties' User Agreements. As such, Plaintiffs' allegations are nothing more than alleged contractual breaches recast as fraud allegations. But, it is well-settled that Plaintiffs cannot bring a fraud claim based on alleged breaches of the User Agreement. *See Milks v. Software AG USA, Inc.*, 2010 WL 11440937, at *8 (N.D. Ga. Apr. 13, 2010) (where defendant's alleged breaches arose directly from the contract, plaintiff's fraud allegations "cannot serve to convert a claim in contract into a discrete claim in tort"). Such allegations are thus insufficient to establish the actual threat of fraud necessary to impose a receiver in this case.

## III. Plaintiffs' Reply Confirms That Money Damages Could Redress Any Injury Attributable to Coinbase.

The two new cases cited for the first time in Plaintiffs' Reply, *Manuel*, 2010 WL 3860407, and *Saluck*, 1999 WL 46620, confirm that a receiver is not appropriate where legal remedies would be adequate to compensate Plaintiffs on any judgment in this case. In *Manuel,* the court denied plaintiff's motion to certify a class and denied the receivership because plaintiffs had not demonstrated "that ordinary legal remedies or less drastic equitable remedies would be inadequate in this case." 2010 WL 3860407 at *7. Similarly, the *Saluck* court granted defendants' motion to compel arbitration and denied plaintiff's motion to appoint a receiver, holding

"Plaintiff has not shown he will be irreparably damaged in the absence of a receiver or that money damages would be inadequate." 1999 WL 46620, at *3.

This case presents an even stronger argument against the appointment of a Receiver because Plaintiffs freely admit in their Complaint that Coinbase, a publicly-traded company subject to annual financial auditing and reporting, had a "net income of $31.6 Billion" at the end of 2021. [Dkt. 71, p. 15; Dkt. 16, Am. Compl. at ¶ 75.] In light of these allegations, it is no wonder that Plaintiffs have not introduced any evidence that money damages, whether cash or cryptocurrency, would be insufficient to compensate them for any losses attributable to the actions or inactions of Coinbase (as opposed to the third-party bad actors.) Lacking any actual evidence or cogent argument on this specific requirement for appointment of a receiver, Plaintiffs theorize that Coinbase might one day be unable to repay them because ***other companies*** in the cryptocurrency marketplace have had financial trouble or even declared bankruptcy. Plaintiffs cannot obtain the extraordinary remedy of a receiver by citing to the financial woes of ***other companies*** that are wholly unrelated to Coinbase. Here, Coinbase is a public company whose audited financials are robust and fully disclosed every quarter. Plaintiffs cite no authority that permits a receivership over a going concern when there is no evidence that the defendant would be unable to pay a potential judgment. Any efforts by Plaintiffs to liken

Coinbase to the privately-held entities that are the debtors in their cited cases is nothing more than baseless speculation.

## CONCLUSION

Plaintiffs' Reply asserts, for the first time, that Plaintiffs seek the appointment of a receiver over a publicly-traded company, on a class-wide basis, prior to class certification. But Plaintiffs' Motion suffers the same deficiencies as the cases they cite in the Reply: there is no credible evidence that Coinbase has or will commit fraud, nor can Plaintiffs establish that monetary damages would be inadequate to compensate them for their alleged losses. For these reasons, Plaintiffs' Motion should be denied.

This 3rd day of April, 2023.

**HOLLAND & KNIGHT LLP**

*/s/ Cynthia G. Burnside*
Cynthia G. Burnside
Georgia Bar No. 097107
Caroline J. Tanner
Georgia Bar No. 392580
Phillip J. George
Georgia Bar No. 441996
Jonathan Spital
Georgia Bar No. 647816
1180 Peachtree Street, N.W., Ste. 1800
Atlanta, GA 30309
(404) 817-8500
(404) 881-0470

cynthia.burnside@hklaw.com
caroline.tanner@hklaw.com
philip.george@hklaw.com
jonathan.spital@hklaw.com

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing has been prepared in accordance with the font and type specifications required under Northern District of Georgia Local Rules 5.1 and 7.1

*/s/ Cynthia G. Burnside*
Cynthia G. Burnside
Georgia Bar No. 097107

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I served a true and correct copy of the within and foregoing **COINBASE INC.'S SUR-REPLY IN OPPOSITION TO MOTION TO APPOINT A RECEIVER** by filing same with the Clerk of Court using the CM/ECF system, and that such filing provided electronic notice to all counsel of record.

This 3rd day of April, 2023.

*/s/ Cynthia G. Burnside*
Cynthia G. Burnside
Georgia Bar No. 097107