**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| George Kattula, Ashley Adams, John Alexander, Kenneth Axelsson, Tara Bennett, Al Bigonia, Joseph Blumetti, Darren Bradley, Dallas Bray, Franklin Calderón, Wayne Colt Carter, Allan Chiulli, Lolletta Cohen, Laleh Dallalnejad, Erick Eliezaire, Mark Gambell, Rodrigo Garcia, Mark Girshovich, Charles Glackin, Eldon Hastings, Roger Haston, Travis Houzenga, Dan Hyatt, Bobby Johnson, Jane Krieser, Eric Larson, Chris Longstreth, Ngoun Mang, Lisa Marcial, Bianca McWilliams, Victor Mechanic, Mihail Mihalitsas, Brady Lee Nessler, Frank Onimus, Vilasini Pillai, William Plyler, Edward Polhill, Steven Paperno, Luis Rodriguez, Earlando Samuel, Von Sims, Varun Singh, Larry Sowell, Vesselina Spassova, Richard Stefani, Christopher Suero, Natalie Tang, Daniel Tucker, Fatima Waheed, Eric White, Bob Whittington, and Karen Wright, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-03250-TWT |
| Plaintiffs, | |
| v. | |
| Coinbase Global, Inc., and Coinbase Inc., | |
| Defendants. | |

**COINBASE GLOBAL, INC. AND COINBASE, INC.'S
REPLY BRIEF IN SUPPORT OF
<u>MOTION TO COMPEL ARBITRATION</u>**

The evidence before the Court demonstrates that each of the 52 Plaintiffs are bound by enforceable arbitration agreements. Plaintiffs know that their disputes belong in arbitration. Although *some* Plaintiffs argue that they were not the ones to agree to the ***2022*** version of the Coinbase User Agreement ("UA"), every Plaintiff is subject to earlier arbitration agreements and no Plaintiff offers any evidence to the contrary. Every version of Coinbase's UA contains an arbitration agreement that expressly delegates the issue of arbitrability to the arbitrator, incorporates the American Arbitration Association ("AAA") consumer rules, which also delegate authority to decide arbitrability to the arbitrator, or both. If Plaintiffs had proceeded in arbitration, it is likely that their claims would have been resolved or on the eve of a merits hearing by now. Instead, Plaintiffs have pursued a variety of gambits—adding 51 plaintiffs to this lawsuit, delaying providing basic identifying information to Coinbase, filing a frivolous motion for a receiver, or taking a shotgun approach to their opposition to Coinbase's Motion—none of which advance their case on the merits or change the fact that these customers' disputes do not belong in this Court, or any court, at all. The Motion to Compel Arbitration (the "Motion") does not raise a close question. This is an easy call - this Court should follow almost every court to have considered Coinbase's arbitration agreements and compel individual arbitration of all Plaintiffs' claims.

## ARGUMENT

### A. Coinbase Timely Invoked Its Right To Arbitration.

Coinbase timely invoked its contractual right to have all of Plaintiffs' disputes determined by an arbitrator by filing its Motion before filing any motion to dismiss and before any discovery was taken. Plaintiffs cannot meet the "heavy burden" of showing that Coinbase waived its right to compel arbitration, and its argument in this regard is unserious. *See Palmer v. Navient Sols., LLC*, 2018 WL 1863829, at *2 (M.D. Fla. Jan. 31, 2018). Coinbase filed its motion seeking disclosure of Plaintiffs' identities in furtherance of its right to arbitrate these disputes because the information Coinbase sought was necessary to confirm the terms of the Coinbase UAs binding each Plaintiff.[1] *See Guerrero v. Haliburton Energy Servs., Inc*., 2018 WL 3615840, at *4 (E.D. Cal. July 26, 2018). Plaintiffs' cited authority regarding waiver is inapposite because, in those cases, either the defendant never raised the delegation issue or moved to compel after a motion to dismiss was denied. *See Entrekin v. Internal Med. Assocs. of Dothan, P.A.*, 689 F.3d 1248, 1252 (11th Cir. 2012); *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 357 (6th

---

[1] Contrary to Plaintiffs' argument, although the UAs were amended periodically, they have <u>always</u> contained broad arbitration agreements and either express or expressly incorporated delegation clauses. *See* Dkt. 80 at 8 n.8 (citing provisions).

Cir. 2022). In contrast, everything Coinbase has done here has been to advance its right to resolve Plaintiffs' disputes in arbitration.

## B.     The Parties Agreed the Arbitrator Decides Arbitrability.

It is well-settled that parties can delegate threshold questions of arbitrability to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Parnell v. Cashcall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). Plaintiffs do not dispute that the UAs dating back to 2019 broadly and expressly delegate to arbitrators exclusive authority to resolve any dispute, including, without limitation, "disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion [thereof]."[2] Such language is clear and unmistakable evidence that the parties intended to delegate arbitrability.[3] *See, e.g.*, *Parnell*, 804 F.3d at 1147-48; *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011).

---

[2] *See, e.g.*, Dkt. 62-1 at App'x 5, § 1.6; 62-2 at App'x 5, § 1.6; 62-3 at § 8.3; 62-4 at § 8.3; 62-5 at § 8.3; 62-6 at §7.2; 62-7 at § 7.2; 62-8 at §8.2; 62-9 at § 8.2; 78-1 at § 8.2; 78-3 at §8.3; 78-4 at § 8.3; 78-5 at § 8.3.

[3] Plaintiffs' Coinbase Wallet arguments are unavailing. *See* Opp. at 24-25. Each Plaintiff has a Coinbase account and entered into a Coinbase UA, which requires arbitration of all claims alleged here against Coinbase, Inc. The company that distributes Coinbase Wallet, Toshi Holdings Pte. Ltd, is not a party to this case, but Coinbase Wallet's Terms of Service also require arbitration. *See* Coinbase Wallet Terms of Service, https://wallet.coinbase.com/terms-of-service.

It is also undisputed that the UAs all expressly incorporate by reference the AAA Rules, which further empower the arbitrator to resolve all threshold questions about arbitrability.[4] *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (incorporation of AAA rules "constitutes clear and unmistakable evidence [of agreement] to arbitrate arbitrability."); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1298 (11th Cir. 2022) (same result).

Plaintiffs argue, without authority, that four exceptions in the 2022 UA Arbitration Agreement "negate" their agreement to delegate the arbitrability issue to arbitrators. *See* Opp. at 17-18. But as other courts faced with Coinbase's 2022 UA have held, "[u]nder the plain language of the Delegation Clause, the question of whether [these exceptions] are, in fact, carved out of the Delegation Clause is, itself, a question for the arbitrator." *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *8 (N.D. Cal. Feb. 3, 2023). Plaintiffs' argument conflates the question of whether a potential dispute is arbitrable with the threshold question of who decides arbitrability. These are separate issues, and "who" comes first: the delegation clause

---

[4] *See, e.g.*, Dkt. 62-2, App'x 5, § 1.4; Sept. 1, 2014, AAA Consumer Arbitration Rules, R-14, https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf. The AAA Rules apply to all Plaintiffs, each of whom first accepted a UA created after this date. *See* Dkt. 78, p. 24 (showing Plaintiff Rodriguez opened the earliest account on Dec. 3, 2014, and was initially bound by the Sept. 9, 2014 UA).

immediately sends all disputes to the arbitrator, who then applies the arbitration agreement to determine arbitrability and applicability of any exceptions. *See* Dkt. 61-1, App'x. 5, § 1.6. The mere presence of a carveout in the arbitration agreement does not "negate" the clear delegation of authority to the arbitrator to determine arbitrability. *See SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018) (collecting cases); *Med X Change, Inc v. Enciris Techs. SAS*, 2020 WL 6287682, at *4 (M.D. Fla. Oct. 27, 2020).

But even if it did, none of the exceptions would apply here. Plaintiffs' challenges to the unconscionability of the arbitration agreement fall outside the carveout for challenges to the enforceability of the Waiver of Class and Other Non-Individualized Relief portion of the arbitration agreement.[5] Similarly, Plaintiffs' dispute as to the *validity* of Coinbase's preconditions for arbitration does not relate to whether Plaintiffs have *fulfilled* these requirements, and thus falls outside the clear language of the carveout for "Disputes about whether either party has ***satisfied***

---

[5] Plaintiffs claim Rodriguez is entitled to bring claims for equitable relief in court under the 2014 UA. *See* Opp. at 18. He created two accounts in 2014 and 2021, and therefore agreed to several versions of the UA. Dkt. 78 at 24-25. The 2021 UA does not carve out claims for equitable relief, meaning Rodriguez must bring equitable claims against Coinbase in arbitration. Even if Rodriguez's claims could be brought in court, neither personal jurisdiction nor venue would be proper here. Dkt. 16, ¶¶ 30, 66-67 (Rodriguez-Florida resident, Coinbase-Delaware/California resident).

any condition precedent to arbitration." *See* Opp. at 17-18 (emphasis added). Finally, manufacturing a dispute as to which arbitration agreement applies to certain Plaintiffs does not change the outcome because even the earlier versions of the UAs to which Plaintiffs agreed by continuing to use their Coinbase accounts require that all disputes be resolved by an arbitrator. *See* App'x A; Dkt. 102, ¶¶ 7-17 and exhibits (UAs applicable at time of last use of Coinbase account).

In sum, the UAs clearly and unequivocally delegate all questions of arbitrability to the arbitrator and "a court may not override the contract." *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019). Even those Plaintiffs who claim they did not agree to the 2022 UA clearly entered into earlier versions of the UA containing similarly broad arbitration agreements that expressly delegated arbitrability to the arbitrator and/or which incorporated the AAA rules delegating threshold issues of arbitrability to the arbitrator. *See* App'x A; Dkt. 102.[6]

### C. Plaintiffs Have Not Proven Unconscionability.

Because the delegation clause is enforceable, the Court need not resolve

---

[6] Claims in Plaintiffs' declarations (Dkt. 83-92) that they do not "specifically recall" accepting UAs when they opened accounts do not prove they are not subject to the UAs' arbitration agreements. *See Sultan*, 354 F. Supp. 3d at 161-62.

Plaintiffs' hodgepodge of objections to the arbitration agreement as a whole.[7] But those arguments independently fail. "[A] contract must be both procedurally and substantively unconscionable to be rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). Plaintiffs have the burden to prove, but fail to satisfy either unconscionability prong, and cannot overcome the numerous cases where courts have found the same arbitration provisions to be valid, binding, and enforceable. *See* Mot. at 18-19; *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) (burden).

### i.  The Agreements Are Not Procedurally Unconscionable.

That Coinbase did not individually negotiate the UAs with each of its millions of users does not make them unconscionable. *See Alfia v. Coinbase Glob., Inc.*, 2022 WL 3205036, at *3 (N.D. Cal. July 22, 2022); *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (contracts of adhesion "are indispensable facts of modern life that are generally enforced"). Plaintiffs have not proved either element of procedural unconscionability: "oppression" or "surprise" due to unequal bargaining power. *See L.A. Unified Sch. Dist. v. Casasola*, 187 Cal. App. 4th 189, 212 (2010). Determining

---

[7] *See* Dkt. 62-1, App'x 5, § 1.6 (granting arbitrator exclusive authority to resolve dispute regarding enforceability of arbitration agreement).

that a contract of adhesion is "oppressive" requires courts consider several factors, including: (1) the parties' relative bargaining power and sophistication, (2) the complaining parties' access to reasonable market alternatives, and (3) the degree to which an offending provision of a contract is buried in a lengthy agreement. *Pearl*, 2023 WL 1769190, at *6. As in *Pearl*, while the parties' relative bargaining power favors Coinbase, Coinbase was not Plaintiffs' only option for crypto services.[8]

Nor can Plaintiffs allege surprise. The arbitration agreements were clearly labeled and identified.[9] The first page of the 2022 UA describes the "agreement to arbitrate" in bold and all capital letters, informing users that Appendix 5 contains the full terms of the arbitration agreement and a "class action and jury trial waiver." Dkt. 62-1. Appendix 5 "'clearly labeled' the delegation clause with the title 'Authority of the Arbitrator' in bold print." *See Pearl*, 2023 WL 1769190, at *7. Earlier UAs contained similar provisions. *See* Dkt. 80 at 8, n.8.

Plaintiffs also argue that the UAs are unconscionable because they were

---

[8] Plaintiffs could have used another cryptocurrency exchange, or deposited their money elsewhere. Thus, there can be no oppression "even assuming unequal bargaining power and an adhesion contract." *See Fisher*, 66 Cal. App. 5th at 1096.

[9] The cases Plaintiffs rely on are inapposite. *See Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 244 (2015) (agreement involved complex choice of law clause "beyond the ken of most anyone."); *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 662 (2022) (defendant knew of contracting party's inability to grasp proposed contract terms due to impaired mental state).

amended from time to time. *See* Opp. at 3-4, citing *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013). However, *Chavarria,* which involved *employees*, not customers, is distinguishable because the court found the degree of procedural unconscionability was enhanced where the employee was not provided the arbitration policy terms until three weeks after the policy was effective. *Id.* at 923. By contrast, Coinbase users were provided the UA and accepted its terms as part of opening their accounts. Plaintiffs here all affirmatively agreed to updated versions of the UAs posted to Coinbase's website, by either continuing to use their Coinbase accounts or checking a box stating that they had agreed to the updated version. Dkt. 62 ¶ 7; Dkt. 78 ¶¶ 8, 10-11.[10] Subsequent events complained of by Plaintiffs (e.g., issues with moving funds to a different platform or with Coinbase Support), are irrelevant because they occurred *after* contract formation. *See Hahn v. Massage Envy Franchising, LLC*, 2014 WL 5099373, at *10 (S.D. Cal. Apr. 15, 2014).[11]

---

[10] The UAs provide for amendment "at any time" and state that if a user does not agree to the change, the "sole and exclusive remedy is to terminate [] use of the Services and close your account." *See*, *e.g.*, Dkt. 62-1, p. 2.

[11] Citing Texas and Ohio law, Plaintiffs argue that the arbitration agreement is illusory as to eight Plaintiffs. But, ignoring jurisdictional and venue issues, California, Texas, and Ohio all recognize that a unilateral modification provision does not, standing alone, render a contract illusory. *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1250 (N.D. Cal. 2019); *Wolfe v. J.C. Penney Corp., Inc.*, 2018-Ohio-3881, ¶ 22.

Plaintiffs argue that an arbitration provision may be procedurally unconscionable in "dire situations" even without surprise. Opp. at 5, citing *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1096 (2021). However, the "dire" circumstances in *Fisher* include a dying patient or a desperate job seeker, neither of whom could "shop around" for an alternative.[12] In contrast, Plaintiffs here had other choices for crypto exchanges, and could freely move their funds to numerous reasonable alternatives. *See Alfia*, 2022 WL 3205036, at *4. And Plaintiffs' arguments regarding the dispute resolution process relate to the *substance*, rather than the *making*, of the UA, and are irrelevant to procedural unconscionability. *See L.A. Unified Sch. Dist.*, 114 Cal. Rptr. 3d at 334.

Finally, the case law overwhelmingly supports Coinbase. Numerous courts around the country have enforced various versions of Coinbase's UAs. *See, e.g.*, *Pearl*, 2023 WL 1769190 (2022 UA); *Donovan v. Coinbase Glob., Inc.*, 2023 WL 2124776, at *1 (N.D. Cal. Jan. 6, 2023) (2022 UA); *Mahmoud v. Coinbase, Inc.*, 2022 WL 18799657 (Cal. Super.) (2022 UA); *Alfia*, 2022 WL 3205036 (Aug. 2017 UA); *Tarverdiyeva v. Coinbase Global, Inc.*, 2021 WL 4527960 (M.D. Fla. Sept. 8,

---

[12] Distinguishably, *Fisher* involved a veteran with poor eyesight who could not see to read an arbitration provision on the back of a money transfer form in six-point font, even with his glasses. 66 Cal. App. 5th 1084.

2021) (Aug. 2017 UA); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156 (E.D.N.Y. 2019) (May 2017 UA). The outlier case cited by Plaintiffs in support, *Bielski v. Coinbase, Inc.*, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022), involved the April 9, 2021 UA,[13] not the 2022 UA clearly applicable to most Plaintiffs here, and is currently on appeal before the Ninth Circuit, Dkt. No. 22-15566. *See* Opp. at 6.

### ii.  The Agreements Are Not Substantively Unconscionable.

Substantive unconscionability requires a provision to be so unjustifiably one-sided that it "shocks the conscience." *Mull v. Motion Picture Indus. Health Plan*, 41 F.4th 1120, 1132 (9th Cir. 2022). "A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). Plaintiffs' complaints about the arbitration agreements fail to show unconscionability.

***Pre-Dispute Resolution Process.*** Plaintiffs argue that Coinbase's dispute resolution process is unconscionable because it is one-sided. Opp. at 6-9.  Because Plaintiffs do not specifically challenge the delegation clause itself, Plaintiffs' unconscionability argument is for the arbitrator, and not this Court, to decide. *See*

---

[13] *See Bielski v. Coinbase, Inc.*, No. 3:21-cv-07478, Dkt. 27 ¶ 14, Dkt. 28-1.

*Brennan*, 796 F.3d at 1133.[14] In any event, "a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (Cal. Ct. App. 2013).[15]

**Mutuality.** Contrary to Plaintiffs' argument, the arbitration agreements in the 2021 and 2022 UAs are mutual. Opp. at 10-11. They contain "broad and far reaching," arbitration agreements that require "any dispute" between Coinbase and its users be resolved through arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); Dkt. 62-1 at App'x 5, § 1.1; 62-3 at § 8.3.

Plaintiffs also assert that the Arbitration Clause is unconscionable because it calls for certain other disputes to be decided by a court. But, "California and federal law treat the substitution of arbitration for litigation as the mere replacement of one dispute resolution forum for another, resulting in no inherent disadvantage."

---

[14] Plaintiffs' argument that the delegation clause is "subject to" these dispute resolution provisions (Opp. at 19-20) does not change this conclusion because the dispute resolution process is a separate independent term of the UA.

[15] Nothing in Coinbase's UA prevents users from contacting regulatory bodies or law enforcement, and Coinbase specifically advises users to contact the police immediately if they believe funds were transferred without their authorization. *See* https://help.coinbase.com/en/coinbase/privacy-and-security/account-compromised/my-account-was-compromised. Plaintiffs cannot conjure unconscionability by relying on a Help Page for a deprecated product (Coinbase Pro) that mistakenly describes the content of the UA.

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1030 (9th Cir. 2016). The parties' agreement to resolve certain disputes in court does not "shock the conscience."

**Limitation of Liability Clause.** Plaintiffs' argument that the Limitation Clause "unconscionably limits" damages awards is based on a misreading of the UA, which does not "exculpate [Coinbase] from liability for negligence." Opp. at 12-13. Rather, the UA prevents recovery of any damages except actual damages without a finding of gross negligence, fraud, willful misconduct, or intentional violation of the law. *E.g.*, Dkt. 62-1, 8.2. In any event, the Limitation Clause is not part of the arbitration agreement and therefore cannot invalidate it. *Kairy v. Supershuttle Int'l, Inc.*, 2012 WL 4343220, at *9 (N.D. Cal. Sept. 20, 2012).[16]

**Attorneys' Fees.** The attorneys' fees provision is expressly bilateral. It applies if "you [the customer] or Coinbase need to invoke the authority of a court . . . to compel arbitration."[17] Bilateral clauses allowing the prevailing party to recover attorneys' fees incurred from a motion to compel arbitration are not unconscionable.

---

[16] Even if it were appropriate to consider the Limitation Clause's enforceability, it states that it "MAY NOT APPLY" in jurisdictions that do not allow the exclusion of certain damages, or in cases involving fraud or willful violation of the law (*e.g.*, Dkt. 62-2, § 8.2), so it cannot be unconscionable. *See Storms v. Paychex, Inc.*, 2022 WL 2160414, at *15 (C.D. Cal. Jan. 14, 2022). It also does not preclude the arbitrator from awarding damages against Coinbase. *E.g.*, Dkt. 62-2, § 8.2.

[17] Dkts. 62-1 and 62-2 at App'x 5, § 1.7; 62-3, 62-4, 62-5 at § 8.3; 62-6 and 62-7 at § 7.2; 62-8 , 62-9, and 78-1 at § 8.2; 78-3, 78-4 , and 78-5 at § 8.3; 78-3 at 24.

13

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1025 (9th Cir. 2016). Also, like the Limitation Clause, this provision operates independently of the parties' agreement to arbitrate and has no bearing on whether the delegation provision is enforceable.

**Amendments.** The arbitration agreement is not unconscionable because it may be amended by Coinbase. *See Donovan*, 2023 WL 2124776. Every customer who continued using their account following the 2022 UA had to affirmatively accept it. Dkt. 62, ¶ 7; Dkt. 78, ¶ 10. Prior to 2022, UAs provided that the customers accepted the terms of any revised version of the UA by continued use of their Coinbase account, or after revisions were posted to the Coinbase website.[18]

**Public Injunctive Relief.** Plaintiffs' conclusory assertion that the arbitration agreements are unconscionable because they prohibit public injunctive relief (Opp. at 15) is also for the arbitrator to decide. *See Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013). If the arbitrator determines Plaintiffs' claims for public injunctive relief are not arbitrable, the UAs require that they be severed, and that arbitration proceed on the remaining claims.[19] *See* Dkt. 62-1, App'x 5, §1.3;

---

[18] Dkt. 62-3, 62-4, and 62-5 at §§ 1.2, 9.5; 62-6, and 62-7 at § 8.5; 62-8 and 62-9 at Part 1; 78-1 at p. 1; 78-3, 78-4 and 78-5, at §§ 1.2, 9.5.

[19] Notably, the relief Plaintiffs seek–ordering Coinbase to prominently disclose its policies for unauthorized transactions–is not a "public injunction," because it would benefit only Coinbase users, and not the public at large. *See* Dkt. 1, ¶ 599; *Torrecillas v. Fitness Int'l, LLC*, 52 Cal. App. 5th 485, 499-500 (2020).

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985). *Merkin v. Vonage Am., Inc.*, 639 F. App'x 481, 482 (9th Cir. 2016).

    ***Arbitration Procedures.*** The 2022 UA does not curtail rights to a hearing, discovery, or counsel. Opp. at 15. Plaintiffs cite no authority showing parties are prohibited from deciding, bilaterally, to resolve certain claims in batches to achieve cost savings and speed resolution. Plaintiffs' concerns about "Batch Arbitration" are unfounded (and irrelevant given only 52 Plaintiffs). If disputed, Coinbase will pay for an "arbitrator to determine the applicability of the Batch Arbitration process." Dkt. 62-2, App'x 5, § 1.8. This clause essentially delegates to an arbitrator the issue of whether the dispute is arbitrable as a batch. Unlike Plaintiffs' cited cases, Coinbase's batch arbitration provision does not impose limitations restricting access to counsel. *See MacClelland v. Cellco P'ship*, 2022 WL 2390997, at *13 (N.D. Cal. July 1, 2022)(counsel restricted to one batch at a time). And Plaintiffs cite no case finding that confidentiality requirements in arbitration are unconscionable.[20]

---

[20] The UAs expressly require severance of unconscionable provisions, and that in such event "the validity or enforceability of any other provision . . . shall not be affected." Dkt. 62-1, § 9.3. The UA also provides for reformation of an offending arbitration provision, but a single or a couple of offending independent provisions do not constitute "a case in which the arbitration provision is 'permeated' by unconscionability and, thus, would have to be 'reformed' in order to eliminate unconscionability." *Farrar v. Direct Com., Inc.*, 9 Cal. App. 5th 1257, 1275 (2017).

## **CONCLUSION**

The delegation clauses in the UAs are enforceable and require that Plaintiffs'

claims be referred to arbitration. None of Plaintiffs' objections to the UAs changes

this conclusion. Thus, Coinbase requests that the Court grant its Amended Motion.

Dated: 19th day of April, 2023.

**HOLLAND & KNIGHT LLP**

*/s/ Cynthia G. Burnside*
Cynthia G. Burnside, Esq.
Georgia Bar No. 097107
Caroline J. Tanner, Esq.
Georgia Bar No. 392580
Phillip J. George
Georgia Bar No. 441996
Jonathan Spital
Georgia Bar No. 647816
1180 Peachtree Street, N.W., Ste. 1800
Atlanta, GA 30309
(404) 817-8500
(404) 881-0470
cynthia.burnside@hklaw.com
caroline.tanner@hklaw.com
philip.george@hklaw.com
jonathan.spital@hklaw.com

## APPENDIX A

### Appendix re: Applicable UAs for Plaintiffs Contesting Acceptance of 2022 UA

| Plaintiff | Account Creation Date | UA Accepted at Account Creation | Allegations in Declarations | Last Account Use Prior to Allegations in Declarations | UA Prior to Last Use Before Allegations in Declarations |
|---|---|---|---|---|---|
| Tara Bennett (Dkt. 84) | 6/3/17 | 9/22/16 (Black Dec. Ex. 7) | Claims she did not log in on February 17, 2022 "or during the at least approximately six months prior to that date." Dkt. 84, ¶ 5. | 12/12/17 | 8/23/17 (Black Dec. Ex. 6) |
| Joseph Blumetti (Dkt. 89) | 11/9/15 | 11/9/15 (Black Dec. Ex. 8) | "An unknown person gained access to and then withdrew cryptocurrency from my account on April 7, 2021." Dkt. 89, ¶ 3. | 4/6/21 | 12/8/20 (Black Dec. Ex. 4) |
| Allan Chiulli (Dkt. 92) | 8/9/17 | 9/22/16 (Black Dec. Ex. 7) | "As set forth in my Declaration dated November 16, 2022, an unknown person gained access to and then withdrew cryptocurrency from my account on November 17, 2021." Dkt. | 10/24/21 | 7/2/21 (First Jankowski Dec. Ex. 38) |

| Plaintiff | Account Creation Date | UA Accepted at Account Creation | Allegations in Declarations | Last Account Use Prior to Allegations in Declarations | UA Prior to Last Use Before Allegations in Declarations |
|---|---|---|---|---|---|
| | | | 92, ¶ 3. | | |
| Mark Gambell (Dkt. 87) | 12/10/17 | 9/22/16 (Black Dec. Ex. 7) | "Without warning or my authorization, approximately $140,000 of cryptocurrency was withdrawn from my Coinbase Wallet in July 2022." Dkt. 87, ¶ 3. | 2/16/18 | 8/23/17 (Black Dec. Ex. 6) |
| Mark Girshovich (Dkt. 86) | 11/17/17 | 9/22/16 (Black Dec. Ex. 7) | "On November 8, 2021, an unknown person accessed my Coinbase account and then initiated two transfers totaling over $20,000 to an account at Coastal Community Bank, a bank based in Everett, Washington." Dkt. 86, ¶ 3. | 10/18/21 | 7/2/21 (First Jankowski Dec. Ex. 38) |
| Charles Glackin (Dkt. 91) | 10/20/16 | 9/22/16 (Black Dec. Ex. 7) | "As set forth in my Declaration dated November 16, 2022, an unknown person gained access to and then withdrew cryptocurrency from my | 12/17/19 | 11/6/19 (Black Dec. Ex. 5) |

| Plaintiff | Account Creation Date | UA Accepted at Account Creation | Allegations in Declarations | Last Account Use Prior to Allegations in Declarations | UA Prior to Last Use Before Allegations in Declarations |
|---|---|---|---|---|---|
| | | | account in January 2020." Dkt. 91, ¶ 3. | | |
| Bobby Johnson (Dkt. 35) | 12/30/20 | 12/8/20 (Black Dec. Ex. 4) | "Without my authorization, funds were withdrawn from my Coinbase Wallet this year on several occasions." Dkt. 35, ¶ 4. | 12/31/21 | 12/6/21 (First Jankowski Dec. Ex. 39) |
| Steven Paperno (Dkt. 85) | 1/29/18 | 8/23/17 (Black Dec. Ex. 6) | "On September 2, 2021, an unknown person withdrew cryptocurrency from my Coinbase account without my authorization." Dkt. 85, ¶ 3. | 8/27/21 | 7/2/21 (First Jankowski Dec. Ex. 38) |
| William Plyler (Dkt. 83) | 12/9/17 | 8/23/17 (Black Dec. Ex. 6) | "An unknown person gained access to and then withdrew cryptocurrency from my account in December 2021." Dkt. 83, ¶ 3. | 1/16/18 | 8/23/17 (Black Dec. Ex. 6) |
| Luis Rodriguez | 1/16/14 | 8/9/13 (First Jankowski | "On May 14, 2021, an unknown person accessed my Coinbase account without my authorization, changed my | 5/9/21 | 4/9/21 (Black Dec. Ex. 3) |

| Plaintiff | Account Creation Date | UA Accepted at Account Creation | Allegations in Declarations | Last Account Use Prior to Allegations in Declarations | UA Prior to Last Use Before Allegations in Declarations |
|---|---|---|---|---|---|
| (Dkt. 88) | | Dec. Ex. 35) | account's email address to a disposable email ending in "@yopmail.com," and made unauthorized transactions in my account, including attempting to withdraw funds from my bank account." Dkt. 88, ¶ 4. | | |
| Fatima Waheed (Dkt. 90) | 1/31/20 | 11/6/19 (Black Dec. Ex. 5) | "Beginning on May 1, 2022, an unknown person accessed my Coinbase account without my authorization and then transferred funds from my Coinbase account to an account at a bank based in Utah that had never before been associated with my account." Dkt. 90, ¶ 4. "I did not log into my Coinbase account on May 1, 2022, or at any other time prior to that in 2022." Dkt. | 10/22/21 | 7/2/21 (First Jankowski Dec. Ex. 38) |

| Plaintiff | Account Creation Date | UA Accepted at Account Creation | Allegations in Declarations | Last Account Use Prior to Allegations in Declarations | UA Prior to Last Use Before Allegations in Declarations |
|---|---|---|---|---|---|
|  |  |  | 90, ¶ 6. |  |  |

## <u>LOCAL RULE 7.1D CERTIFICATE</u>

The undersigned hereby certifies that the foregoing has been formatted in Times New Roman font, 14-point type, which complies with the font size and point requirements of Local Rule 5.1B.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed this document with the Clerk of the District Court using the CM/ECF system, which sends notification of such filing to all attorneys of record.


This 19th day of April, 2023.


By: <u>*/s/ Cynthia G. Burnside*</u>
Cynthia G. Burnside

1