# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| George Kattula, Ashley Adams, John Alexander, Kenneth Axelsson, Tara Bennett, Al Bigonia, Joseph Blumetti, Darren Bradley, Dallas Bray, Franklin Calderón, Wayne Colt Carter, Allan Chiulli, Lolletta Cohen, Laleh Dallalnejad, Erick Eliezaire, Mark Gambell, Rodrigo Garcia, Mark Girshovich, Charles Glackin, Eldon Hastings, Roger Haston, Travis Houzenga, Dan Hyatt, Bobby Johnson, Jane Krieser, Eric Larson, Chris Longstreth, Ngoun Mang, Lisa Marcial, Bianca McWilliams, Victor Mechanic, Mihail Mihalitsas, Brady Lee Nessler, Frank Onimus, Vilasini Pillai, William Plyler, Edward Polhill, Steven Paperno, Luis Rodriguez, Earlando Samuel, Von Sims, Varun Singh, Larry Sowell, Vesselina Spassova, Richard Stefani, Christopher Suero, Natalie Tang, Daniel Tucker, Fatima Waheed, Eric White, Bob Whittington, and Karen Wright, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>Coinbase Global, Inc., and Coinbase Inc.,<br><br>   Defendants. | CIVIL FILE ACTION<br>NO. 1:22-cv-03250-TWT<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE OR DISREGARD INADMISSIBLE EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO COINBASE'S AMENDED MOTION TO COMPEL ARBITRATION** |

# INTRODUCTION

Before the Court is Defendants' straightforward Motion to Strike or Disregard Inadmissible Evidence Submitted In Support of Plaintiffs' Opposition to Coinbase's Amended Motion To Compel Arbitration ("Motion to Strike"). Coinbase moved to strike the inadmissible statements in "declarations" that either repeat counsel's legal arguments or contain conclusory allegations that are not feasibly within the Plaintiffs' personal knowledge. Few of the arguments in Plaintiffs' Response are actually responsive to the issues raised in the Motion to Strike.[1] Instead, Plaintiffs have filed an improper sur-reply to the Motion to Compel Arbitration–styled as a response in opposition to Defendants' Motion to Strike–in which they repeat many of the same arguments made in their Opposition to the Motion to Compel Arbitration.

The briefing on Coinbase's Motion to Compel Arbitration is closed and has been submitted. In support of that Motion, Coinbase timely submitted evidence establishing that each Plaintiff agreed to arbitration when they opened and used their account. Plaintiffs have not, despite their myriad of scattershot filings, raised any

---

[1] In addition to being legally and factually baseless, the scattershot arguments raised in the 52 separate declarations only illustrate the unique and individualized nature of Plaintiffs' claims, proving that Plaintiffs' (and the non-plaintiff declarants') claims should be decided on an individual basis.

1

credible dispute to the Plaintiffs' agreements to arbitrate. Plaintiffs' latest "evidence" does not change the state of play and is not admissible in any event. For that latter reason, Coinbase moved to strike and its motion should be granted.

## RESPONSE TO LEGAL STANDARD

Once the existence of an arbitration agreement is established, "[t]he party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1324 (S.D. Fla. 2016) (explaining that "[t]his burden is not unlike that of a party seeking summary judgment" and the party should identify evidence supporting its contention) (quotations omitted); *see also Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) ("A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement.").

Plaintiffs do not dispute that declarations must be based on personal knowledge and set out testimony that would be admissible in evidence. *See* Response at 3-4. Rather, Plaintiffs argue that they need not submit evidence in "admissible form" at this stage of the proceedings. This argument is a red herring:

2

the statements challenged in the declarations are not evidence at all. The declarations submitted by Plaintiffs fail to satisfy basic evidentiary requirements, and they should thus be stricken and/or disregarded by the Court. Plaintiffs similarly suggest that Coinbase, not Plaintiffs, has the "burden of identifying specific evidence and showing it cannot be presented in an admissible form at trial." (Response at 5). That is wrong. Plaintiffs, not Coinbase, have the burden of establishing the admissibility of evidence that they have offered. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Plaintiffs failed to meet that burden. The Court should grant Coinbase's Motion to Strike (and its Motion to Compel Arbitration).

## ARGUMENT AND CITATION TO AUTHORITY

### I. Plaintiffs' Opinions about Coinbase's Policies, Procedures, and Positions are Inadmissible Legal Argument or Legal Opinions.

Coinbase challenges two statements appearing in substantially identical form in the declarations submitted by Plaintiffs as being inadmissible under FRE 602 because they are not based on personal knowledge: (1) "Apparently, the unauthorized access to my account either failed to generate any fraud detection warnings within Coinbase or it willfully turned a blind eye in an effort to reap illicit

3

profits;"[2] and (2) "I am surprised that Coinbase would contend that a provision in a 2022 amended [UA] would apply retroactively and shield Coinbase from responsibility for the misconduct in which Coinbase engaged in 2021 and caused me to lose my cryptocurrency."[3] These statements are nothing more than counsel's legal argument, or inappropriate opinions regarding the law which Plaintiffs are not qualified to provide. Plaintiffs' assertions are self-serving speculation that should be disregarded.

As to the first statement, Plaintiffs do not claim to have any personal knowledge regarding Coinbase's fraud detection procedures, including when fraud detection warnings are triggered, or how Coinbase responds to such warnings. The false dichotomy proffered by Plaintiffs is thus based on nothing other than sheer conjecture. That Plaintiffs prefaced their statement with the qualifier "***Apparently…***" is an admission that their statements are comprised merely of assumptions and speculation. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1305–06, 1317–18 (11th Cir. 2011) (affirming refusal to consider assertions of "belief" extrapolated from other evidence); *Hamilton v. Sikorsky Aircraft Corp.*, 2018 WL 10704410, at *4 (S.D. Fla. Mar. 6, 2018), *aff'd*, 760 Fed.

---

[2] Dkt. 83 ¶ 8; *see also* Dkt. 84, ¶ 7; Dkt. 85, ¶ 6; Dkt. 86, ¶ 9; Dkt. 87 ¶ 8; Dkt. 88, ¶ 12; Dkt. 89 ¶ 8; Dkt. 90, ¶ 7; Dkt. 91 ¶ 9; Dkt. 92 ¶ 9.
[3] Dkt. 83 ¶ 7; *see also* Dkt. 86 ¶ 7; Dkt. 89 ¶ 5; Dkt. 91¶ 8; Dkt. 92 ¶ 5.

Appx. 872 (11th Cir. 2019) (assertion that "white male colleagues were **apparently** earning [more]" was speculative) (emphasis added).[4] And Plaintiffs' rhetorical statement that Coinbase "*willfully turned a blind eye in an effort to reap illicit profits*" is plainly argument, attributing legal conclusions relating to duty, negligence, *mens rea*, and improper motives to Coinbase.

In the second statement above, Plaintiffs again proffer legal argument and opinions as to the enforceability of a provision in the 2022 UA. The rote statement regarding the alleged retroactive application of the 2022 UA (and "responsibility for the misconduct in which Coinbase engaged") is again legal argument, not evidence. Moreover, this argument is irrelevant because even if that particular UA did not apply, Plaintiffs would still be subject to the UAs in place when they last used their Coinbase account, all of which contain substantially similar arbitration provisions as the 2022 UA. *See* Fed. R. Evid 401, 402; *see generally* Coinbase's Reply Br. in Supp. of Mot. to Compel Arbitration (Dkt. 106); Second Dec. of Tony Jankowski (Dkt. 102). Finally, Plaintiffs' use of the word "surprise" in their declarations is

---

[4] Coinbase's Motion cites *Exceptional Mktg. Grp., Inc. v. Jones*, 749 F. Supp. 2d 1352, 1358-59 (N.D. Ga. 2010) (Thrash, J.) as an example of this Court declining to consider "assertions of [a declarant's] personal 'belief' regarding [defendant's] business practices." Plaintiffs note this case is "from the employment context," but do not suggest that the Federal Rules of Evidence governing declarations somehow apply differently here. *See* Response at 16.

unrelated to the element of "surprise" in procedural unconscionability analysis, and is therefore irrelevant. *See Pearl*, 2023 WL 1769190, at *6. To create their Coinbase accounts, each of the Plaintiffs here, like all Coinbase users, had to click a verification box confirming that they agreed to the UA, which included the Arbitration Agreement. Dkt. 62 ¶ 6. Plaintiffs' statements should also be disregarded.

## II. Plaintiffs Cannot Rely on Inadmissible Hearsay.

Plaintiffs' statements describing unproduced and unauthenticated written communications with Coinbase are prohibited by the hearsay, Best Evidence, and authentication rules. *See* Fed. R. Evid. 801-802, 901, 1002.[5]

Descriptions of written communications or other out-of-court statements purportedly made by Coinbase are undisputedly hearsay. Plaintiffs' argument that these hearsay statements are admissible as a statement of a party opponent because Coinbase "does not deny" making them turns the relevant standard on its head. *See* Response at 18. "Rule 801(d)(2)(D) requires the *proffering party* to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment." *Funderburk v. Fannie Mae*, 2015 WL 11216690, at *4 (N.D. Ga. Nov. 16, 2015), *aff'd*, 654 F. App'x 476 (11th Cir. 2016) (emphasis in

---

[5] *See* Dkt. 85 ¶ 3; Dkt. 86 ¶¶ 3-4; Dkt. 88 ¶¶ 4-6, 10; Dkt. 89 ¶ 3; Dkt. 91 ¶¶ 4, 6.

original) (explaining that "the proffering party fails to lay a foundation when it relies on an unidentified agent's statement."). Plaintiffs do not lay that foundation or address *Funderbrunk* and the other cases cited by Coinbase in which courts refuse to attribute alleged communications to a party where the proffering party fails to establish that the accused party or their agent actually made the referenced communications. *See id.* at *5; *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *Maestrey v. Johnson*, 2020 WL 738316, at *4, n.5 (M.D. Ga. Feb. 13, 2020).

Plaintiffs provide no evidence that the challenged statements were made by Coinbase's "agent or employee on a matter within the scope of that relationship and while it existed," as required for a statement of a party opponent. Nor is there any indication that Plaintiffs could present such evidence. The introduction of hearsay without satisfying the requirements of Rule 801(d)(2)(D) is particularly problematic in this case where Plaintiffs have previously falsely attributed to Coinbase insulting statements that were made by an imposter using *an entirely different e-mail domain*. *See* David Lee Decl. (Dkt. 26); Dkt. 66 at 2-3. Plaintiffs' citation to untrustworthy evidence and refusal to produce the underlying correspondence on which their hearsay testimony is based supports Coinbase's objections.

To the extent Plaintiffs' declarations purport to describe written emails and correspondence with Coinbase, the Best Evidence Rule requires that these documents be produced in order to ensure their accuracy. *See United States v. Tombrello*, 666 F.2d 485, 491 (11th Cir. 1982); *United States v. Henry*, 307 F. App'x 331, 336 (11th Cir. 2009). Plaintiffs' argument that they "may testify to their recollection of their communications with Coinbase" ignores that Plaintiffs' "recollection" is based *entirely* on withheld written communications, and thus is indistinguishable from testifying as to the contents of the writings themselves. *See* Response at 20. Plaintiffs' strategic decision to attach some documents and exclude others further calls into question the reliability of the unattached documents and/or veracity of Plaintiffs' representations about those documents.

*United States v. Holland*, 223 F. App'x 891, 897 (11th Cir. 2007), cited by Plaintiffs, is inapposite as it does not address the propriety of considering the contents of written communications at all. *See* Response at 20, n.47. *Holland* held that a witness may testify as to an *oral* conversation without also introducing a "corroborative" tape recording of the phone call, because the witness "was testifying as to his recollection of the conversation . . . based on his own personal knowledge." In fact, none of the cases cited by Plaintiffs to support the argument that they need not submit evidence in an admissible format (*see* Response, notes 7 and 9) involved

8

a declaration about documents in the declarant's possession, but not attached to the declaration. Plaintiffs' cited cases involved documentary evidence that was submitted to the court but not authenticated.[6]

Plaintiffs have no independent knowledge of communications from Coinbase separate and apart from the written documents whose contents they are seeking to prove while withholding the actual communications. *See Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 2013 WL 12370546, at *1 (S.D. Fla. Apr. 3, 2013) (striking declaration that described unproduced emails, noting that it would be "impossible" for the opposing party to meaningfully respond to the allegations

---

[6] *See Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1148, 1156, n.2 (11th Cir. 2021) (plaintiffs provided studies, census data, surveys, and reports to the Court, and there was "no indication that these materials would not have been capable of authentication later."); *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 430 (6th Cir. 2018) (discussing admissibility of deposition testimony); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (at-issue contract was submitted to the Court, appeared to be an accurate copy of the agreement, and there was no apparent reason why the document was "not capable of being admitted at an eventual trial."); *Abbott v. Elwood Staffing Servs., Inc.*, 44 F. Supp. 3d 1125, 1132, 1135 (N.D. Ala. 2014) (plaintiff proffered notes to the Court, and defendants did "not argue that the document cannot be authenticated."); *Forbo Flooring, Inc. v. Falcone Glob. Sols., LLC*, 2022 WL 4596639, at *24 (N.D. Ga. July 22, 2022) (documentary evidence submitted to Court "appear[ed] to be such that it may be easily authenticated at trial."); *see also Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578-79 (2d Cir. 1969) (where affidavit summarized deposition testimony and documentary exhibits, the Court "could have properly disregarded these statements.").

9

without having seen the emails).[7] For these reasons, the statements described above from each declarant's declaration should be disregarded.

### III. Arguments Regarding Preconditions to Arbitration Are Irrelevant to Coinbase's Motion to Strike or Motion to Compel.

Because Plaintiffs are not specifically challenging the delegation clause itself, their unconscionability arguments are for the arbitrator, and not this Court, to decide. *See* Dkt. 106 at 11-12 (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). In addition to being irrelevant[8], Plaintiffs' arguments regarding unconscionability do not rectify the evidentiary problems with Plaintiffs' declarations.

Plaintiffs' argument that Coinbase is required to establish "business realities" that create "the special need" for its contractual dispute resolution procedure is

---

[7] Mr. Rodriguez's alleged communications with Coinbase regarding blacklisting "yopmail" email addresses are also irrelevant to Coinbase's Motion to Compel, as it conflates Coinbase's response to general feedback regarding its platform with its response to specific user "disputes." *See* Response at 20, n.48; 2022 UA (Dkt. 62-1), §7.

[8] Plaintiffs again cite the NYDFS Consent Order (Response at 9, n.21), but as Coinbase already addressed: (1) it is irrelevant because it refers to aspects of Coinbase, Inc.'s anti-money laundering/Bank Secrecy Act compliance program, which has nothing to do with Plaintiffs' claims regarding unauthorized transactions; and (2) those unrelated issues are already within the purview of the New York Department of Financial Services. Dkt. 66 at 9-10; Dkt. 75 at 12-13.

incorrect. *See* Response at 10.[9] The Arbitration Agreements in the 2021 and 2022 UAs are mutual as they are "broad and far reaching," requiring "any dispute" between Coinbase and its users to be resolved through arbitration. *See* Dkt. 106 at 12, quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); Dkt. 62-1 at App'x 5, § 1.1; 62-3 at § 8.3. Because the Arbitration Agreements are mutual, there is no requirement to show a business reality or special need.[10] In any event, the need is obvious. Like any large customer-facing business, Coinbase maintains a complaints handling function. It makes no sense for customers or Coinbase to run to arbitration without first attempting to resolve a dispute through

---

[9] While Plaintiffs elsewhere complain about Coinbase's citation to employment cases, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) is also in the employment context. *See, e.g.*, 24 Cal. 4th at 113 ("we will consider objections to arbitration that apply more generally to any type of arbitration imposed on the employee by the employer as a condition of employment."). The case is also distinguishable on several other grounds as well. *See, e.g.*, *Farrar v. Direct Com., Inc.*, 9 Cal. App. 5th 1257, 1275 (2017) (distinguishing *Armendariz* and finding court abused its discretion in refusing to sever offending provision).

[10] Plaintiffs again cite *Bielski v. Coinbase, Inc.*, No. 3:21-07478-WHA, 2022 WL 1062049, at *5 (N.D. Cal. Apr. 8, 2022). But *Bielski* is on appeal before the Ninth Circuit, Dkt. No. 22-15566, and Plaintiffs ignore the numerous courts around the country that have enforced various versions of Coinbase's UAs. *See, e.g.*, *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *8 (N.D. Cal. Feb. 3, 2023); *Donovan v. Coinbase Glob., Inc.*, 2023 WL 2124776, at *1 (N.D. Cal. Jan. 6, 2023); *Mahmoud v. Coinbase, Inc.*, 2022 WL 18799657 (Cal. Super.); *Alfia v. Coinbase Glob., Inc.*, 2022 WL 3205036 (N.D. Cal. July 22, 2022); *Tarverdiyeva v. Coinbase Global, Inc.*, 2021 WL 4527960 (M.D. Fla. Sept. 8, 2021); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156 (E.D.N.Y. 2019).

Coinbase's complaints process. Nothing about this requirement is onerous or shocking. *See Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (Cal. Ct. App. 2013) ("a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate."). To the contrary, the process for submitting formal complaints is simple and straightforward. A user need only fill out an online form providing information about their claim, and then submit it electronically for determination. Dkt. 62-1 at § 7.2.1. The process is completed either forty-five (45) business days after the user submits their complaint or when Coinbase resolves the complaint, whichever occurs first. *Id.* After either outcome, the user is free to file a claim in small claims court or to commence arbitration. Dkt. 62-1 at § 7.2, App'x 5 at § 1.1. Had Plaintiffs simply followed the dispute resolution procedures that they agreed to under the UAs, Plaintiffs' claims would likely already be resolved.

**IV.   Plaintiffs' Arguments as to the UA Applicable to Each Plaintiff is Irrelevant Because all Plaintiffs are Indisputably Bound by Arbitration Agreements.**

Plaintiffs' Opposition to Coinbase's Motion to Compel alleges that certain Plaintiffs did not themselves agree to the 2022 UA, or did not otherwise voluntarily agree to the 2022 UA. Dkt. 93 at 7. In response to this new information, Coinbase

explained at its first opportunity that even *if* that were true, it would not change the outcome of Coinbase's Motion to Compel because earlier versions of the UAs to which Plaintiffs agreed by continuing to use their Coinbase accounts (rather than close them) require that all disputes be resolved by an arbitrator. Dkt. 106 at 6. In support of this argument, Coinbase attached the transaction history of these users to demonstrate the date of their last undisputed use, and the corresponding applicable UA, which was already in the Court's record. *Id.* at App'x A; Dkt. 102.[11] Coinbase did not, as Plaintiffs falsely suggest, submit "new arbitration agreements with its Reply brief." Response at 11.[12] Nor is Coinbase seeking to unilaterally amend the applicable arbitration agreements, as Plaintiffs claim. Response at 12. Regardless of which version of the UA applies, every single version that these Plaintiffs agreed to requires their disputes, including issues of arbitrability, be decided by an arbitrator.

---

[11] For example, Plaintiffs discuss Mr. Plyler (Response at 13-14), but their arguments do not change the analysis. As Coinbase demonstrated, even accepting Mr. Plyler's allegations, his last prior account use occurred in 2018, and the UA prior to that last use was the August 23, 2017 UA, to which he was bound and which has a substantively similar Arbitration Agreement. *See* Dkt. 106 at 20; Dkt. 102, ¶ 15.

[12] The transaction histories Coinbase produced with its reply brief are also entirely different from the screenshots that Coinbase produced pursuant to the Court's February 1, 2023 Order. Dkt. 69-1.

13

## CONCLUSION

For the foregoing reasons, Coinbase requests that this Court grant its Motion to Strike.

This 17th day of May, 2023.

**HOLLAND & KNIGHT LLP**

*/s/ Cynthia G. Burnside*
Cynthia G. Burnside
Georgia Bar No. 097107
Caroline J. Tanner, Esq.
Georgia Bar No. 392580
Philip J. George
Georgia Bar No. 441996
Jonathan B. Spital
Georgia Bar No. 647816
1180 Peachtree Street, N.W., Ste. 1800
Atlanta, GA 30309
(404) 817-8500
(404) 881-0470
cynthia.burnside@hklaw.com
caroline.tanner@hklaw.com
philip.george@hklaw.com
jonathan.spital@hklaw.com

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE OR DISREGARD INADMISSIBLE EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO COINBASE'S AMENDED MOTION TO COMPEL ARBITRATION** has been prepared in accordance with the font and type specifications required under Northern District of Georgia Local Rules 5.1 and 7.1.

*/s/ Cynthia G. Burnside*
Cynthia G. Burnside
Georgia Bar No. 097107

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I served a true and correct copy of the within and foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE OR DISREGARD INADMISSIBLE EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO COINBASE'S AMENDED MOTION TO COMPEL ARBITRATION** by filing same with the Clerk of Court using the CM/ECF system, and that such filing provided electronic notice to all counsel of record.

This 17th day of May, 2023.

>                /s/ Cynthia G. Burnside
> Cynthia G. Burnside
> Georgia Bar No. 097107